**Fred J. DITTMAN, Plaintiff,**

v.

**CODE–A–PHONE CORP., et al., Defendants,**

and

**CODE–A–PHONE CORP., et al., Third-Party Plaintiffs,**

v.

**UNIDEN CORPORATION OF JAPAN, Third-Party Defendant.**

**Civ. No. F 85–435.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Aug. 18, 1987.

---

**1270**

Steven G. Schumaier, Schumaier, Roberts & McKinsey, Clayton, Mo., John H. Krueckeberg, Krueckeberg & Smith, Fort Wayne, Ind., for Dittman.

James P. Fenton & Thomas A. Herr, Barrett & McNagny, Fort Wayne, Ind., for Code-A-Phone & Conrac.

Edward L. Murphy, Jr., Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., for KWF & Ford.

John O. Sheller & F. Samual Eberts, III, Barnes & Thornburg, Fort Wayne, Ind., for Uniden.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on third-party defendant's motion to dismiss for lack of personal jurisdiction and forum non conveniens pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons which follow, the motion will be denied.

### I. Statement of the Case

Plaintiff, Fred J. Dittman, filed this suit against Code-A-Phone corporation and Conrac Corporation (collectively referred to as "Code-A-Phone"), as well as two other defendants who have since been dismissed. The suit is premised on injuries he received when one of Code-A-Phone's cordless telephones emitted a loud noise into Dittman's ear, causing partial permanent hearing loss in that ear. Code-A-Phone filed a third-party complaint against Uniden Corporation of Japan (Uniden of Japan), seeking indemnity for any damages awarded to Dittman. Uniden of Japan's motion is currently before the court.

### II. Facts

Uniden of Japan is a foreign corporation, incorporated under the laws of Japan with its principal place of business in Japan. Code-A-Phone is a Delaware corporation with its principal place of business in Clackamus, Oregon.

Code-A-Phone determined that it wanted to enter the cordless telephone market. Without any in-house expertise with this product, it sought a manufacturer with the necessary experience. It entered negotiations with Uniden of Japan and concluded a contract in the Far East to purchase several thousand of the cordless telephones.

Uniden of Japan is the parent to other corporations peripherally involved in this transaction. Several component parts were manufactured by Uniden of Japan's Hong Kong subsidiary, and the telephones were assembled by Uniden of Japan's Taiwan subsidiary. In addition, Uniden of Japan has its own distribution subsidiary in the United States, Uniden Corporation of America (Uniden of America), whose princi-

pal place of business is Indianapolis, Indiana.

The contract between Code-A-Phone and Uniden of Japan called for delivery of the telephones to Code-A-Phone in the Far East. Code-A-Phone used its own distribution facilities to sell the product throughout the United States. The only direct connection that Uniden of America had with this transaction was the preparation and processing of the Federal Communication Commission (FCC) application filed in connection with the registration of a remote telephone and fixed base unit. The application lists the applicant as Uniden of Japan, and the party to receive the registration grant was Uniden of America. The person responsible for preparing the engineering information was Jim Haynes, Product Manager for Uniden of America.

Code-A-Phone also emphasizes two other aspects of the evidence in connection with this motion. First, it notes an exhibit which shows Uniden of Japan's shipment of cordless telephones to Uniden of America in Indianapolis. Second, it points to the deposition of Gary Houdek, Uniden of Japan's Vice-President, in which he stated that Uniden of Japan's chairman, Hiroyasu Kuneida, spends approximately 60% of his working schedule in Indianapolis.

### III. Issues

#### A. Personal Jurisdiction

In a diversity case, the extra-territorial jurisdiction of the court is controlled by Indiana law. This law is found in Indiana's long-arm statute in Trial Rule 4.4. *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1362 (7th Cir.1985). This rule has been interpreted as extending to the limits of due process under the fourteenth amendment. *See generally Int'l Steel Co. v. Charter Builders, Inc.*, 585 F.Supp. 816 (S.D.Ind.1984).

Due process requires that a defendant have sufficient minimum contacts with the forum before it may be subject to *in personam* jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The cornerstone of this analysis is whether the defendant " 'purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)); *see also Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir.1985). To foresee only that a product will ultimately arrive in the forum state is not enough:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct in connection with the forum state [is] such that he should reasonably anticipate being haled into court there.

*World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567.

Both parties have cited the Supreme Court's latest ruling on this issue, occurring in a case with many similar circumstances. In *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, —— U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), plaintiff was injured when a tire on the motorcycle on which he was riding exploded. He sued the manufacturer of the tire, Cheng Shin, who filed a third-party complaint for indemnity against the manufacturer of the tire's valve assembly, Asahi. The Court held that the state court assertion of personal jurisdiction over Asahi was inconsistent with due process.

An examination of the facts of *Asahi* as well as the Court's reasoning illustrate why the exercise of personal jurisdiction in this case is proper. In that case, Asahi manufactured the tire valve assemblies in Japan and sold them to Asahi in Taiwan. The shipments were sent from Japan to Taiwan. Asahi knew that some of its valve assemblies would be sold throughout the United States, including California, after their incorporation into Cheng Shin's tires, but never contemplated that its limited

sales of the tire valves to Cheng Shin would subject it to suit in California.

In considering the propriety of exercising personal jurisdiction in these circumstances, the Court reaffirmed the viability of the stream of commerce theory it expounded in *World-Wide Volkswagen*:

> "[t]he forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."

*Asahi*, 107 S.Ct. at 1031 (quoting *World-Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at 567). It noted further that lower courts had interpreted this language in two ways. The broader interpretation has allowed the exercise of personal jurisdiction simply when the defendant has placed the product in the stream of commerce; the narrower interpretation has required the action of the defendant to be more purposefully directed at the forum state. The Court then emphasized its agreement with the latter position, *id.* at 1033, and held that Asahi engaged in no such purposeful activity:

> Asahi does not do business in California. It has no office, agents, employees, or property in California. It does not advertise or otherwise solicit business in California. It did not create, control, or employ the distribution system that brought its valves to California. There is no evidence that Asahi designed its product in anticipation of sales in California.

*Id.* In reaching this conclusion, the Court weighed a variety of factors, including the burden of the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the forum's interest in furthering fundamental substantive social policies. *Id.* at 1034.

■ A comparison of the circumstances of *Asahi* and the case at bar in light of these considerations shows that, while some tend to favor Uniden of Japan's posi-

tion over Code-A-Phone's, their combined effect indicates that the assertion of personal jurisdiction over Uniden of Japan is appropriate. For example, unlike Asahi, there is no question that Uniden of Japan has conducted extensive marketing and sales of its products throughout the United States. Thus, its characterization of the transaction at issue is one in which the parties conducted negotiations overseas with little thought or awareness as to the ultimate destination of the cordless telephones is misleading and inaccurate.

The thrust of Uniden of Japan's argument is its contention that it dealt with unrelated entities exclusively in the Far East. This approach ignores significant contacts that Uniden of Japan has with the United States in connection with cordless telephones. The more germane question relates to the significance of the fact that this case involves cordless telephones that were sold to and distributed by Code-A-Phone rather than telephones marketed directly by Uniden of Japan. Thus, a major distinction from *Asahi* becomes apparent in this particular inquiry in that, unlike Asahi, who marketed a component which was integrated into a larger product, Uniden of Japan sold Code-A-Phone a finished product, other versions of which Uniden of Japan itself actively marketed throughout the United States. Thus, Uniden of Japan's contact with the American market, including Indiana, does not stem solely through its contacts with Code-A-Phone. Not only did Uniden of Japan have much more direct knowledge of the ultimate destination of the telephones because of its intimate knowledge of the American market for them, it was an acknowledged expert in the field. Therefore, a more accurate way to characterize the situation presented by this case is to view Uniden of Japan as being a major participant in the American cordless telephone market, which happened on this occasion to divert the sale of its product through Code-A-Phone.

The FCC application procedure is especially telling in this regard. Code-A-Phone, a domestic corporation, approached Uniden of Japan for assistance in this process. It

only states the obvious that if Uniden of Japan was involved, through its subsidiary Uniden of America, in gaining approval from American licensing authorities, it not only knew where the products it sold to Code-A-Phone would be sold, but actively facilitated this process.

Again in its piecemeal approach in this case, Uniden of Japan attempts to isolate itself from every other player in this case. It states that it has no control over the operations of its subsidiaries in Taiwan and Hong Kong which manufactured and assembled components of the telephones sold to Code-A-Phone. That these other entities are subsidiaries of Uniden of Japan, a fact which Uniden of Japan studiously avoids acknowledging in its motion, suggests otherwise.

Uniden of Japan's parent-subsidiary relationship with Uniden of America is more interesting regarding the specific facts of the contract at issue. Uniden of America processed the FCC application on behalf of Uniden of Japan, and in fact, was the recipient of the registration grant. This shows two things which indicate that the exercise of personal jurisdiction over Uniden of Japan is proper. First, it shows that the operations of at least Uniden of Japan and Uniden of America are not completely separate and distinct, a fact also supported by evidence indicating that officers of Uniden of Japan spend a considerable amount of their working time in Indianapolis, headquarters of Uniden of America. Second, Uniden of America's location within Indiana provides the minimum contacts necessary to comply with due process. Thus, jurisdiction is not based solely on the parent-subsidiary relationship, but rather on the way in which this relationship operated in this case.

Consideration of the factors raised in *Asahi* does not counsel a different result. The burden on Uniden of Japan is not significant, since it is a major international corporation familiar with operating in the American market, and its major American subsidiary, Uniden of America, has its principal place of business in Indiana. The interests of the forum state include providing one of its citizens complete relief. Uniden of Japan argues that this goal is met by the availability of Code-A-Phone as a defendant, and that essentially this dispute concerns only Code-A-Phone and Uniden of Japan, two multinational corporations, since Dittman has not named Uniden of Japan in his complaint.

This argument has some merit, but is outweighed by other considerations. Part of Uniden of Japan's argument in this regard points out that Code-A-Phone, as a major multinational corporation, is quite capable of bringing its own suit against Uniden of Japan in a more appropriate forum. This argument cuts both ways, since Uniden of Japan has not shown why it would be any more difficult for it to defend a suit in Indiana than it would be for Code-A-Phone to bring a suit in Japan. Its argument that much of the evidence in this case is located in Japan is not convincing in light of Code-A-Phone's indication that only limited discovery is necessary, most of which is located in Indiana. Equally unconvincing is Uniden of Japan's insistence that Japan is the logical forum, since the contract was entered into in "the Far East." This single fact overlooks other important factors discussed above which place the entire relationship between the parties in a much more international context, with significant ties to Indiana.

Other countervailing reasons in favor of exercising jurisdiction over Uniden of Japan exist in the application of the remaining factors raised in *Asahi*. Keeping the case together as a whole encourages the court's interest in the efficient conduct of litigation. Uniden of Japan argues that efficiency is better served by going forward solely with Dittman's claim against Code-A-Phone, since a successful defense by Code-A-Phone will end the case completely. This optimistic view does not take into account the effect of the opposite outcome, which would result in much more expenditure of judicial resources in processing a completely new case. On balance, given the progress of this case to date, the availability of evidence, and the ability of Uniden of Japan to defend itself in Indiana, there is no compelling efficiency

argument that can be made in favor of severing the indemnity claim from the underlying claim.

Finally, and perhaps most importantly, the court must consider the more far-reaching implications of its decision on substantive social policies. Clearly, Uniden of Japan has a considerable presence in the American market for cordless telephones. Equally clear, despite its characterizations to the contrary, Uniden of Japan clearly knew of, and in fact played a significant part in, the ultimate distribution of this product in the United States, and consequently Indiana. To deny personal jurisdiction over Uniden of Japan in these circumstances would contravene the policy set forth in *World-Wide Volkswagen* and subsequently affirmed in other cases that a party should be made to answer for the performance of its products in markets which it intentionally enters and from which it profits. *See Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1125 (7th Cir.1983) (manufacturer of product distributed through secondary distributor may be subject to jurisdiction when it has intended to serve the broader market and derives benefits therefrom).

### B. Forum Non Conveniens

Uniden of Japan argues that even if sufficient minimum contacts exist for the exercise of personal jurisdiction in this case, it should be dismissed on grounds of forum non conveniens. This contention is unpersuasive.

The doctrine of forum non conveniens was firmly established in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and received its most significant elaboration in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The doctrine allows a court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil*, 330 U.S. at 507, 67 S.Ct. at 842. Its importance has been diminished significantly by 28 U.S.C. § 1404(a), which authorizes the transfer of cases between federal courts, although slightly different standards apply. For example, "[l]ess of a showing of inconvenience is needed for a § 1404(a) transfer than for a *forum non conveniens* dismissal." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir.1986). In light of § 1404(a), therefore, application of forum non conveniens most frequently occurs where, as here, a forum outside the country is arguably more convenient.

*Gulf Oil* outlined the specific factors a court must consider when addressing a forum non conveniens issue, while emphasizing that "[t]he doctrine leaves much to the discretion of the court." *Id.*, 330 U.S. at 508, 67 S.Ct. at 843. The Court made a division between private and public factors. Private interests include access to proof, availability of compulsory process, the relative expenses that would be involved, the ability to enforce a judgment, and the need to avoid the use of a forum to harass a party. *Id.* Public interests include administrative difficulties for courts, the burden on jurors in a community with no relation to the controversy, and the desirability of having a court apply law with which it is familiar. *Id.* at 508–09, 67 S.Ct. at 843.

■ Given the factual context of this case, application of these factors indicates that the case should stay in this court. Most of the private factors either have no application to this case or weigh in favor of Uniden of Japan. Access to proof is perhaps the element most strongly pressed by Uniden of Japan, who claims that much proof of the underlying transaction is located in the Far East. As noted earlier, this assertion, largely unsupported by specific allegations as to the actual proof required or anticipated, has been countered by Code-A-Phone's claim that relatively little evidence will have to be developed outside of Indiana. At best, from Uniden of Japan's point of view, this presents a conflict between the parties as to the nature of proof this case will require. In light of the remaining factors, however, this conflict hardly justifies a finding that this forum is so inconvenient that the third-party complaint ought to be dismissed.

In this regard, the unavailability of compulsory process, if any, would seem to have the greatest impact on Code-A-Phone. It is not likely that Uniden of Japan will be burdened by recalcitrant witnesses within its own organization, and there has been no showing that any evidence within Code-A-Phone's control is located in the Far East. Similarly, the enforceability of any judgment is more likely to be a problem for Code-A-Phone as third-party plaintiff. If Uniden of Japan should emerge from the case with a judgment of its own, it should have little difficulty enforcing it in this court against Code-A-Phone's domestic assets. Finally, there can be no suggestion that Code-A-Phone chose this forum in order to harass Uniden of Japan, since the choice at the outset was made by Dittman. Beyond this fact, however, it is hard to conceive of a more convenient forum within the United States for Uniden of Japan than this court, since it is located in the state in which Uniden of Japan's American subsidiary is based.

The public factors of *Gulf Oil* likewise do not indicate that jurisdiction is improper in this court. This case is not so cumbersome that it presents any untoward administrative burdens. Given Uniden of America's relationship with Uniden of Japan in the context of this case, it cannot be said that prospective jurors will come from a community with no interest in the litigation. Finally, while the contract between Uniden of Japan and Code-A-Phone calls for Oregon law to control its terms, the court is nonetheless confident that its ability to construe this law surpasses that of any court in the Far East. Consequently, Uniden of Japan's motion to dismiss on the grounds of forum non conveniens will be denied.

### IV. Conclusion

Therefore, for all of the foregoing reasons, Uniden of Japan's motion to dismiss is DENIED.