**INTERMATIC, INC., Plaintiff,**

v.

**TAYMAC CORPORATION, Michael Shotey, Clifford Engineering & Sales Company, Inc., Ron Clifford, F.W. Baetzel Company, and F. William Baetzel, Defendants.**

No. IP 92–1059–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 3, 1993.

291

David H. Badger, Daniel L. Boots, Katherine L. Tabor, Willian Brinks Olds Hofer Gilson & Lione, Indianapolis, IN, for plaintiff.

Robert P. Johnstone, Barnes & Thornburg, Indianapolis, IN, for defendant Taymac Corp.

Alex L. Rogers, Steers, Sullivan, McNamar & Rogers, Indianapolis, IN, for defendants Clifford Engineering & Sales Co., Inc. and Ron Clifford.

James W. Riley, Jr., Riley, Bennett & Egloff, Indianapolis, IN, for defendants Clifford Engineering & Sales Co., Inc., Ron Clifford, F.W. Baetzel Co. and F. William Baetzel.

Randall C. Helmen, Hume, Smith, Geddes & Green, Indianapolis, IN, for defendant Ron Clifford.

David M. Haskett, Locke Reynolds Boyd & Weisell, Indianapolis, IN, for defendants F.W. Baetzel Co. and F. William Baetzel.

## ORDER ON MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

McKINNEY, District Judge.

Defendants Michael Shotey ("Shotey") and F. William Baetzel ("Baetzel") have both filed motions requesting dismissal for lack of personal jurisdiction. Intermatic Incorporated ("Intermatic"), Shotey, and Baetzel have filed their briefs and the issues are ready to be resolved. For the reasons discussed below, this Court DENIES Shotey's motion to dismiss and GRANTS Baetzel's motion to dismiss.

## I. FACTUAL & PROCEDURAL BACKGROUND

Intermatic is a Delaware corporation with its principal place of business in Illinois. Taymac Corp. ("Taymac") is an Arizona corporation with its principal place of business in Arizona. Shotey is a resident of Arizona and is the president of Taymac. Intermatic and Taymac both sell electrical outlet box covers for use in outdoor locations.

Baetzel is an officer of F.W. Baetzel Co., Inc. ("Baetzel Inc."). Baetzel Inc. is a Kentucky corporation with its principal place of business in Kentucky. It has a sales agreement with Taymac under which it is the exclusive sales agent for Taymac in six Indiana counties.

Intermatic claims that Taymac, through Shotey, sent letters and memoranda containing false and defamatory information concerning Intermatic's products to Taymac's Indiana sales representatives. Intermatic also claims that in these communications Shotey encouraged Taymac's sales representatives to share the information with their distributors. On August 4, 1992, Intermatic brought this diversity action seeking recovery based on theories of product defamation and disparagement and intentional interference with prospective business relations.[1] Intermatic also seeks a declaratory judgment that it has not infringed a patent held by Taymac.

On October 14, 1992, Shotey filed his motion to dismiss for lack of personal jurisdiction. On October 21, 1992, Baetzel filed his motion to dismiss for lack of personal jurisdiction. Intermatic responded to both motions and Shotey filed a reply.

## II. PERSONAL JURISDICTION STANDARDS

 If a defendant moves for dismissal for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), the burden is on the plaintiff to demonstrate a basis for personal jurisdiction. *Simpson v. Quality Oil Co.*, 723 F.Supp. 382, 386 (S.D.Ind.1989). The plaintiff can shift this burden by establishing a prima facie case that jurisdiction is proper. *Id.* To determine whether the exercise of personal jurisdiction is proper, a court may receive and consider affidavits and other documentary evidence. *Curtis Management Group v. Academy of Motion Picture Arts*, 717 F.Supp. 1362, 1364 (S.D.Ind.1989). All facts and reasonable inferences are to be viewed in a light most favorable to the nonmoving party, *Simpson*, 723 F.Supp. at 386, and all factual disputes are to be resolved in favor of the nonmoving party. *Curtis Management Group*, 717 F.Supp. at 1364.

 In a diversity case, a district court has jurisdiction over a non-resident defendant only if a court of the state in which the district court sits would have jurisdiction. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991). For a court to have jurisdiction, both the state long-arm statute and the constitutional guarantee of due process must allow the court to exercise jurisdiction over the person. *Wilson*, 916 F.2d at 1243. In Indiana, however, the state long-arm statute extends personal jurisdiction to the limit of the due process clause, and thus, the only consideration is whether an exercise of jurisdiction complies with due process. *Id.*

---

1. In an order dated December 2, 1992, this Court dismissed Intermatic's claim for relief based on its intentional interference with prospective business relations claim pursuant to Fed.R.Civ.P. 12(b)(6).

█ Due process requires that a defendant have minimum contacts with the forum so that maintaining the suit does not offend "traditional notions of fair play and substantial justice." *Wilson,* 916 F.2d at 1243 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). These minimum contacts must be established by a defendant's purposeful acts. *Id.*

█ There are two types of personal jurisdiction that can be established by a defendant's minimum contacts with a forum: specific and general. *Id.* at 1244. Specific jurisdiction is present if the defendant has contacts from which the cause of action arises, and which constitute at least the minimum level of contact with the forum that allows the exercise of jurisdiction to be reasonable. *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *see also* 4 Wright & Miller, *supra,* at 296. General jurisdiction, on the other hand, is present if the defendant's overall activity in the state is sufficiently "continuous and systematic" that the court's exercise of jurisdiction over the defendant is reasonable and just, even though the plaintiff's cause of action does not arise from and is not related to the defendant's contacts with the forum. *Helicopteros Nacionales de Columbia,* 466 U.S. at 414–15, 104 S.Ct. at 1872–73; *see also* 4 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure 296. In practice, the standard for establishing general jurisdiction is fairly high. *Wilson,* 916 F.2d at 1245.

## III. DISCUSSION

### A. Shotey's Motion to Dismiss

#### 1. Fiduciary Shield Doctrine

█ Shotey argues that none of his contacts with Indiana can support this Court exercising personal jurisdiction over him because the contacts occurred as a result of Shotey acting in his capacity as an officer of Taymac. He invokes the fiduciary shield doctrine, which precludes a state from exercising jurisdiction over an individual sued in his or her personal capacity if the only basis for jurisdiction is his or her contacts with the forum in which he or she was acting solely as a fiduciary of a corporation. *See Ryan v. Chayes Virginia, Inc.,* 553 N.E.2d 1237 (Ind. Ct.App.1990); *see also* Thomas H. Sponsler, *Jurisdiction Over the Corporate Agent: The Fiduciary Shield,* 35 Wash. & Lee L.Rev. 349 (1978).

Although courts previously have questioned whether the fiduciary shield doctrine exists as an element of federal due process, or as a state law doctrine, *see, e.g., Columbia Briargate Co. v. First Nat'l Bank in Dallas,* 713 F.2d 1052, 1055–57 (4th Cir.1983), *cert. denied sub nom., Pearson v. Columbia Briargate Co.,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984), it is presently viewed as a state law doctrine which functions as a tool for courts to apply in determining the scope of state long-arm statutes. *See Calder v. Jones,* 465 U.S. 783, 788–790, 104 S.Ct. 1482, 1486–1487, 79 L.Ed.2d 804 (1984) (holding that defendants' status as employees does not somehow insulate them from jurisdiction and implicitly rejecting due process-based fiduciary shield doctrine); *Cantrell v. Extradition Corp. of Am.,* 789 F.Supp. 306, 309 (W.D.Mo.1992) ("The fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the long-arm statute."); *Thomas McKinnon Sec. v. Hamiltonian Indus., Inc.,* 610 F.Supp. 5, 7 (D.C.N.Y.1985) (holding that although *Calder* rejects the fiduciary shield doctrine as an aspect of due process, the doctrine still may be used in equitably construing the reach of state long arm statutes); *see also Keeton v. Hustler Magazine,* 465 U.S. 770, 780–81 n. 12 & 13, 104 S.Ct. 1473, 1480–81 n. 12 & 13, 79 L.Ed.2d 790 (1984) (discussing *Calder*); Robert A. Koenig, Note, *Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield,* 38 Stan.L.Rev. 813, 832–33 (1986) (discussing *Calder's* rejection of due process-based fiduciary shield doctrine); *but see Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 396–401, 565 N.E.2d 1302, 1314–19 (1990) (reviewing the doctrine as applied as a component of Illinois law and adopting the doctrine as a requisite under the Illinois due process clause); Jennifer Babbin, Note, *The Fiducia-*

*ry Shield Doctrine: Minimum Contacts in a Special Context,* 65 B.U.L.Rev. 967, 994 (1985) (arguing that the fiduciary shield doctrine should be maintained and recognized as "an expression of the [due process] minimum contacts standard in a special context"). Therefore, prior to determining whether under the circumstances in this case Shotey may invoke the fiduciary shield doctrine to defeat personal jurisdiction, this Court must determine whether the doctrine has been adopted in Indiana.

In determining the law of Indiana, this Court looks to the Supreme Court of Indiana. *See Erie R.R. v. Tomkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Brooks v. Chicago Downs Assoc. Inc.,* 791 F.2d 512, 514 (7th Cir.1986). However, the Supreme Court of Indiana has not addressed the issue of whether the fiduciary shield doctrine has been adopted in Indiana. Therefore, this Court must consider whether the Supreme Court of Indiana, if faced with the issue, would hold that the fiduciary shield doctrine is a facet of Indiana law. *See Indianapolis Airport Auth. v. American Airlines, Inc.,* 733 F.2d 1262 (7th Cir.1984); *see also* 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4507 (1982).

In considering this question, a discussion of the history and development of the doctrine is necessary. It is generally believed that the fiduciary shield doctrine arose out of a misreading of a *dictum* contained in *Boas & Associates v. Vernier,* 22 A.D.2d 561, 257 N.Y.S.2d 487 (1965). *See Columbia Briargate v. First Nat'l Bank in Dallas,* 713 F.2d 1052, 1055 (4th Cir.1983); *Kreutter v. McFadden Oil Co.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 199, 522 N.E.2d 40, 44 (1988); Sponsler, *supra* at 352; Carlos R. Carrasquillo, Note, *The Fiduciary Shield Doctrine: A Rule of Statutory Construction or A Constitutional Principle?,* 9 J.Corp.L. 901, 907 (1984); Koenig, *supra,* at 820. In *Boas,* the Appellate Division of the Supreme Court of New York addressed the issue of whether "the alleged causes of action [for breach of contract] arose from any act [committed by Boas] within [New York], thereby conferring personal jurisdiction under [New York's long arm statute]." 257 N.Y.S.2d at 489. In concluding that the cause of action did not so arise, the court noted that the defendant had executed the writing at issue in the case as general manager of a corporation, and not as an individual; therefore, as a matter of substantive New York law no recovery could be had against the defendant individually. *Id.* at 490.

The court in *United States v. Montreal Trust Co.,* 358 F.2d 239 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966), read *Boas* as creating a rule which prevents an individual's contacts with a forum that result from acting in a official capacity for an organization from providing a basis for jurisdiction over the individual. It called this rule the fiduciary shield, and thus created the doctrine. *See Montreal Trust,* 358 F.2d at 242; *see also Kreutter,* 527 N.Y.S.2d at 199, 522 N.E.2d at 44 (discussing evolution of the doctrine). Since its conception in *Montreal Trust,* the fiduciary shield doctrine has been recognized by a variety of courts. *See, e.g., CutCo Indus. v. Naughton,* 806 F.2d 361 (2d Cir.1986); *Stuart v. Spademan,* 772 F.2d 1185 (5th Cir.1985); *Totalplan Corp. v. Lure Camera Ltd.,* 613 F.Supp. 451 (W.D.N.Y.1985); *Sharp Elec. Corp. v. Hayman Cash Register Co.,* 1982 WL 1860 (D.N.J. May 20, 1982) (unpublished decision); *State Sec. Ins. Co. v. Frank B. Hall & Co.,* 530 F.Supp. 94 (N.D.Ill.1981); *Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322 (E.D.N.Y.1981); *Warren v. Dynamics Health Equip. Mfg. Co.,* 483 F.Supp. 788 (M.D.Tenn.1980); *Lamar v. American Basketball Assoc.,* 468 F.Supp. 1198 (S.D.N.Y. 1979); *Merkel Assoc., Inc. v. Bellofram Corp.,* 437 F.Supp. 612 (W.D.N.Y.1977); *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302 (1990); *Olinski v. Duce,* 155 Ill.App.3d 441, 108 Ill.Dec. 237, 508 N.E.2d 398 (1987); *Ryan v. Chayes Virginia, Inc.,* 553 N.E.2d 1237 (Ind.Ct.App.1990); *State ex rel. Miller v. Internal Energy Management Corp.,* 324 N.W.2d 707 (Iowa 1982). Although the doctrine developed without receiving much criticism, the questionable origins of the doctrine, the lack of articulation and analysis accompanying application of the doctrine, the fact that the doctrine served to obfuscate application of traditional due pro-

cess analysis, and the fact that the doctrine allowed for easy but seemingly incorrect answers to jurisdiction questions, eventually caused commentators to suggest that the doctrine be abolished. *See* Sponsler, *supra*, at 350, 365; Carrasquillo, *supra*, at 930; Koenig, *supra*, at 840.

Although the fiduciary shield doctrine was believed to have been created in New York, New York has now rejected the doctrine. In *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988), the New York Court of Appeals reviewed the birth and development of the fiduciary shield doctrine and unequivocally held that the doctrine was not a component of New York law. In assessing the merits of the doctrine, the court concluded that the doctrine "is unsound or at a minimum ... unworkable." *Id.* 527 N.Y.S.2d at 202, 522 N.E.2d at 47. It found that the

> equitable concerns which motivated the doctrine are amply protected by the constitutional due process requisites which guarantee that jurisdiction over a nonresident will be sustained only when the demand for his presence is reasonable and consistent with notions of " 'fair play and substantial justice.' "

*Id.* 527 N.Y.S.2d at 201, 522 N.E.2d at 46 (citation omitted).

In light of New York's resounding repudiation of the fiduciary shield doctrine, it would appear that the doctrine is now moribund. However, some courts continue to apply the doctrine. In recent years, the federal district courts in Indiana have recognized the fiduciary shield doctrine, but have not determined whether the Supreme Court of Indiana would adopt the doctrine if given the

opportunity.[2] Additionally, the doctrine has been applied by the Court of Appeals of Indiana. *See Ryan v. Chayes Virginia, Inc.*, 553 N.E.2d 1237 (Ind.Ct.App.1990).

In deciding whether the Supreme Court of Indiana would adopt the fiduciary shield doctrine, decisions of the Court of Appeals of Indiana, if available, provide a strong indication of how the Supreme Court of Indiana would decide a question, unless there is a persuasive reason to believe otherwise. *See Garris v. Swartz*, 551 F.2d 156, 158 (7th Cir.1977); *Burleson v. Illinois Farmers Ins. Co.*, 725 F.Supp. 1489, 1491 n. 2 (S.D.Ind. 1989). In fact, if this Court is convinced that an Indiana Court of Appeals decision is a correct or even defensible barometer of the Supreme Court of Indiana's probable treatment of a question of law, this Court is bound to follow the Court of Appeals of Indiana decision. *Indianapolis Airport Auth.*, 733 F.2d at 1272. Therefore, of particular interest with respect to determining whether the Supreme Court of Indiana would adopt the fiduciary shield doctrine, is the decision of the Court of Appeals of Indiana in *Ryan.*

In *Ryan*, the plaintiff was hired to serve as an officer for a corporation headquartered in Evansville, Indiana. Shortly after the plaintiff moved to Indiana and purchased a condominium, he was fired. He brought an action in state court against the corporation and some of its employees for breach of contract, detrimental reliance, and fraud. The trial court dismissed two of the individual defendants for lack of personal jurisdiction. On review, the Court of Appeals of Indiana affirmed the dismissal. It adopted the fiduciary shield doctrine and based its decision to affirm on the fact that the defendants con-

---

**2.** Shotey cites *Hafner v. Lutheran Church–Missouri Synod*, 616 F.Supp. 735 (N.D.Ind.1985) in his brief in support of his motion to dismiss. In *Hafner*, the court applied the doctrine but did not discuss whether it was an element of state law or a requirement of federal due process; it simply applied the doctrine as a general rule. *See id.* at 739. Accordingly, the court did not expressly acknowledge *Calder*'s implicit rejection of the doctrine as a requirement of federal due process, and did not provide a discussion addressing the issue of whether the Supreme Court of Indiana would itself adopt the doctrine.

In his reply brief, Shotey also relies on this Court's unpublished order in *Stonehard, Inc. v. American Flooring & Lining, Inc.*, No. 88–994–C, slip op. at 5–9 (S.D.Ind. May 2, 1990). Whatever the persuasive value of an unpublished order cited for the first time in a reply, *Stonehard* offers very little in the way of support for Shotey's motion to dismiss. In *Stonehard*, the general applicability of the fiduciary shield doctrine and whether the doctrine was a creature of federal or state law never was at issue. Rather, application of the doctrine was assumed—the parties' dispute was limited to whether a specific exception to the doctrine was available.

tacts with the forum had been made in their corporate capacities. *Ryan*, 553 N.E.2d at 1239–240. In support of its application of the fiduciary shield doctrine, the court in *Ryan* cited a case decided by the United States District Court for the Northern District of Indiana,[3] and a number of cases applying Illinois and New York law which identify the doctrine as an equitable tool used in applying state long arm statutes.[4]

This Court is persuaded that, if faced with the decision, the Supreme Court of Indiana would decline to adopt the fiduciary shield doctrine and would not follow the decision of the Court of Appeals of Indiana in *Ryan*. The court in *Ryan* did not discuss or acknowledge either the extensive criticism of the doctrine, or *Kreutter*'s rejection of the doctrine as unsound and unworkable. More importantly, the court in *Ryan* did not discuss the conflict in Indiana law which would be created if the doctrine were to be adopted in Indiana. It is well-established that Indiana's long-arm statute reaches to the limits of due process. *See Reed v. Int'l Union of UAW*, 945 F.2d 198, 201 (7th Cir. 1991); *Wilson*, 916 F.2d at 1243; *Wallace v. Herron*, 778 F.2d 391, 393 (7th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986); *Curtis Management Group*, 717 F.Supp. at 1366; *Dittman v. Code–A–Phone Corp.*, 666 F.Supp. 1269, 1271 (N.D.Ind.1987); *Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 308 (S.D.Ind.1978); *Fetner v. Maury Boyd & Assoc., Inc.*, 563 N.E.2d 1334, 1336 (Ind.Ct.App.1990); *Dura–Line Corp. v. Sloan*, 487 N.E.2d 469, 470 (Ind.Ct.App.1986); *see also* 1 William F. Harvey, *Indiana Practice* 132 (1987) ("The intention of the Legislature and the Supreme Court of Indiana was to expand personal jurisdiction in Indiana's courts to the limit which is permitted under the Due Process Clause of the 14th Amendment of the Federal Constitution. Indiana decisions since 1970 show a steady compliance with that inten-

tion."). However, the fiduciary shield doctrine limits the jurisdictional reach of a state to less than that which is allowed by due process. *See Calder*, 465 U.S. 783, 104 S.Ct. at 1483. Thus, application of the fiduciary shield doctrine would be contrary to the well-established interpretation given to Indiana's long-arm statute. Other courts have acknowledged that the doctrine is incompatible with state long-arm statutes that extend to the limits of due process and concluded that the doctrine should not be applied in states having such long-arm statutes. *See Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir.1989); *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 521–22 (9th Cir.1989); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987); *Cantrell*, 789 F.Supp. at 309–310; *Chase v. Pan–Pacific Broadcasting, Inc.*, 617 F.Supp. 1414, 1422–23 (D.C.D.C.1985).

For all of these reasons, the fiduciary shield doctrine cannot be asserted to defeat personal jurisdiction in Indiana. Therefore, the only issue to address in ruling on Shotey's motion to dismiss is whether the exercise of personal jurisdiction over him complies with the requirements of due process.

### 2. Shotey's Indiana Contacts & the Due Process Requirement

■ Intermatic does not argue that Shotey has had continuous and systematic contacts with Indiana to support this Court exercising general jurisdiction over him. Rather, it argues that jurisdiction over Shotey is proper in light of Shotey's contacts with Indiana which are related to the transaction underlying this litigation—i.e., specific jurisdiction. In assessing whether specific jurisdiction is present, this Court must assess the relationship among Shotey, the forum state of Indiana, and the litigation. *Wallace*, 778 F.2d at 393. Shotey's contacts which support jurisdiction, according to Intermatic, arise

3. *Hafner v. Lutheran Church–Missouri Synod,* 616 F.Supp. 735 (N.D.Ind.1985). For a discussion of *Hafner,* see footnote 2.

4. The court in *Ryan* cited the following cases to support its characterization of the fiduciary shield doctrine as an "equitable" doctrine: *Wallach Marine Corp. v. Donzi Marine Corp.*, 675

F.Supp. 838 (S.D.N.Y.1987); *Hyatt International Corp. v. Inversiones Los Jabillos,* 558 F.Supp. 932 (N.D.Ill.1982); *State Security Insurance Co. v. Frank B. Hall & Co.*, 530 F.Supp. 94 (N.D.Ill. 1981); and *Washburn v. Becker,* 186 Ill.App.3d 629, 134 Ill.Dec. 418, 542 N.E.2d 764 (1989).

from Shotey's intentional direction of letters and memoranda about Intermatic's product to all of Taymac's Indiana sales representatives. Intermatic also points to provisions in Shotey's communications which encourage its sales representatives to relay the information to their distributors.

This Court finds that based on Shotey's purposeful contacts with Indiana relating to the transaction underlying this litigation, specific jurisdiction over Shotey is proper. This decision is guided by *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* entertainer Shirley Jones brought a libel suit in California against a magazine, its local distributor, and individual employees of the magazine after the magazine published an article about Jones. The individual employees, residents of Florida who played some role in writing or editing the allegedly libellous article, argued that personal jurisdiction could not be had over them in California. The Supreme Court found that the defendants' intentional and allegedly tortious actions were expressly aimed at California. In support of this conclusion, the Court noted that the article "impugned the professionalism of an entertainer whose television career was centered in California[,] ... was drawn from California sources, and the brunt of the harm ... was suffered in California." *Id.* at 788–89, 104 S.Ct. at 1485–86. The Court found that jurisdiction could be properly exercised over the defendants based on the effects that their conduct had in California and because the defendants should have reasonably anticipated being haled into court in California to answer for the truth of the statements made in the article. *Id.* at 789–790, 104 S.Ct. at 1486–87.

Similarly, Shotey should have reasonably anticipated having to answer in Indiana for the truth of the statements he made in the letters and memoranda he sent to Taymac's Indiana sales representatives. Shotey's deliberate actions were expressly aimed at Indiana and calculated at having an effect—impugning Intermatic's product reputation and thus harming Intermatic—in Indiana. This Court may properly exercise personal jurisdiction over Shotey.

*B. Baetzel's Motion*

Intermatic has responded to Baetzel's motion to dismiss for lack of personal jurisdiction by claiming that the arguments set out in Baetzel's memorandum are unpersuasive and that this Court may properly exercise personal jurisdiction over Baetzel. Nevertheless, Intermatic consents to Baetzel's dismissal from this action without prejudice.

## IV. SUMMARY & CONCLUSION

Because this Court believes that the Supreme Court of Indiana, if faced with the decision, would decline to adopt the fiduciary shield doctrine, the doctrine can provide no basis for this Court to decline to exercise personal jurisdiction over Shotey. In light of the relationship between Shotey, Indiana, and the transaction underlying this case, exercising personal jurisdiction over Shotey does not offend due process. Therefore, Shotey's motion to dismiss for lack of personal jurisdiction is DENIED.

Intermatic consents to Baetzel's motion to dismiss for lack of personal jurisdiction. Baetzel's motion is therefore GRANTED.

IT IS SO ORDERED.