HEALTH MANAGEMENT PROFES-
SIONALS, INC., a Louisiana Corpora-
tion, and Michael Mielke, Plaintiffs,

v.

DIVERSIFIED BUSINESS ENTERPRIS-
ES, INC., a New York Corporation, d/b/a
The Institutes for Health and Human
Services, Inc., and d/b/a Management
Systems and Services, Inc., Joseph J.
O'Hara, and Glenn Mazula, Defendants.

DIVERSIFIED BUSINESS ENTERPRIS-
ES, INC., a New York Corporation, and
d/b/a The Institutes for Health and Hu-
man Services, Inc., and d/b/a Manage-
ment Systems and Services, Inc., Coun-
terclaim–Plaintiffs,

v.

HEALTH MANAGEMENT PROFES-
SIONALS, INC., a Louisiana Corpora-
tion, and Michael Mielke, Counter-
claim–Defendants.

No. IP 91–C–1142 B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 15, 1995.

Robert J. Schuckit, Dann Pecar Newman Talesnick & Kleiman, Indianapolis, IN, for plaintiff.

Jay M. Brodey, Harrison & Moberly, Indianapolis, IN, for defendant.

BARKER, Chief Judge.

Defendant Joseph J. O'Hara moves to dismiss the claims against him in this cause of action for lack of personal jurisdiction. For the reasons stated below, O'Hara's motion to dismiss is denied.

## I. BACKGROUND

Plaintiff Michael Mielke is President of Plaintiff Health Management Professionals, Inc. ("HMPI"). Defendant Joseph J. O'Hara, a New York resident, is President and a shareholder of Defendant Institute for Health and Human Services, Inc. ("IHHS").[1]

The instant case centers around a business deal, involving, *inter alia*, Mielke, HMPI, and IHHS, to provide certain services to the State of Indiana ("State"). While this deal was being negotiated, O'Hara, in his capacity as President of IHHS, traveled to Indianapolis several times to meet with representatives of the State. On May 10, 1990, O'Hara, in his capacity as President of IHHS, signed a contract to provide certain services to the State (the "Indiana Project"). Earlier, on August 31, 1988, and September 8, 1988, a Memorandum of Agreement (the "Agreement") was entered by and between Glenn Mazula, as President of Defendant Management Systems and Services, Inc. ("MSI"), O'Hara, as President of IHHS, and Mielke, as President of HMPI.[2] Under the terms of the Agreement, HMPI was to serve as project manager for the Indiana Project and market the services of IHHS. Prior to the execution of the Agreement, all parties to the Agreement, including O'Hara, met in Indiana.

While under the obligation of the Agreement, O'Hara instructed Mielke to undertake certain activities in Indiana. Although IHHS is a Missouri corporation with no permanent offices, IHHS did maintain an office in Indianapolis as a result of the Indiana Project. At the termination of the Indiana Project, the Indiana IHHS office was closed. During the Indiana Project, O'Hara met in Indianapolis with representatives of the State to, *inter alia*, assure proper performance under the terms of the Indiana Project and to obtain further contacts with the State for IHHS.

In Spring, 1991, O'Hara sought to terminate the Agreement, citing "aberrant actions" taken by Mielke in his role as Project Coordinator for the Indiana Project. At about this time, O'Hara travelled to Indiana and directed staff in Indiana to review documents in Mielke's Indiana files. O'Hara directed the IHHS staff to remove all of Mielke's belongings from the Indianapolis IHHS office and send them to O'Hara in New York. O'Hara also directed the IHHS staff to change the locks on the doors and refuse entry to Mielke. Additionally, O'Hara notified representatives of the State as to Mielke's termination.

After terminating the Agreement, O'Hara continued travelling to Indiana and dealing with the State. O'Hara has entered into further contracts with the State to provide similar (if not identical) services to those contemplated in both the Agreement and the Indiana Project. As a result, O'Hara and IHHS have profited. In the instant lawsuit, Mielke and HMPI contend that the Defendants breached the terms of the Agreement

---

1. O'Hara also states that he has served as representative of another corporation, presumably Defendant Management Systems and Services, Inc. ("MSI"). However, O'Hara's involvement with MSI and MSI's involvement in the instant case need not be examined for purposes of this motion.

2. The Agreement, by its own terms is binding upon the companies and the individuals themselves. However, O'Hara testifies in his affidavit that he "contemplated that only the corporations would be parties to the ... Agreement and, therefore, signed only in [his] representative capacity."

and, as a result, Mielke and HMPI have been damaged because they have been denied compensation due under the terms of the Agreement. Mielke and HMPI request damages, declaratory relief, and an accounting.

## II. DISCUSSION

 In determining what constitutes sufficient contact with a state to allow a court to exercise personal jurisdiction, a court must examine the facts and circumstances on a case by case basis. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213 (7th Cir.1984). When personal jurisdiction is challenged, the plaintiff bears the burden of demonstrating a basis for the assertion of the state's long-arm statute. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); *Intermatic, Inc. v. Taymac Corp.*, 815 F.Supp. 290, 292 (S.D.Ind.1993). The court may consider affidavits and other documents outside the pleadings in reaching its decision, but must construe all facts concerning jurisdiction in favor of the non-movant, including disputed or contested facts. *L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425, 1428 (N.D.Ind.1994) (citing *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied, sub nom. Bunnan Tong & Co., Ltd. v. F.W. Woolworth Co.*, 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984); *Deluxe Ice Cream Co.*, 726 F.2d at 1215; *Intermatic, Inc.*, 815 F.Supp. at 292. The non-moving party's burden is met by a prima facie showing that jurisdiction is conferred by the state long-arm statute, and any

affidavits or other specific evidence offered by the non-moving party must be assumed true for these purposes. *See Turnock v. Cope*, 816 F.2d 332, 335 (7th Cir.1987) (citing *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir.1971)).

 A federal court, sitting in diversity, can exercise personal jurisdiction only so far as allowed by the law of the state in which it sits. Fed.R.Civ.P. 4(e), 4(k)(1)(A). Indiana's long-arm statute (Indiana Trial Rule 4.4(A)) thus controls this Court's exercise of personal jurisdiction over nonresident defendants. To determine whether personal jurisdiction over a nonresident defendant exists, this Court must determine

> (1) whether the Indiana long-arm statute authorizes the exercise of jurisdiction over the nonresident, and

> (2) whether the exercise of personal jurisdiction pursuant to the long-arm statute violates the nonresident's due process rights under the Fourteenth Amendment....

*Fidelity Financial Services, Inc., v. West*, 640 N.E.2d 394, 396 (Ind.App.1994) (citations omitted). The Indiana long-arm statute has been held to extend personal jurisdiction to the full limits established by the Due Process Clause of the Fourteenth Amendment.[3] *Intermatic, Inc.*, 815 F.Supp. at 292 (citing *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir.1990), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991)); *Brokemond v. Marshall Field & Co.*, 612 N.E.2d 143, 145 (Ind.App.1993). Therefore, the two inquiries collapse into one. *See Wilson*, 916 F.2d at 1243. Thus, this Court

---

3. Indiana's long-arm statute provides:

**A) Acts Serving as a Basis for Jurisdiction.** Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

(2) causing personal injury or property damage by an act or omission done within this state;

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, ma-

terials, or services used, consumed, or rendered in this state;

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state;

(5) owning, using, or possessing any real property or an interest in real property within this state;

(6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made; or

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state. Ind.T.R. 4.4(A).

must analyze whether personal jurisdiction over O'Hara is permissible under the Due Process Clause of the Fourteenth Amendment.

In *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court first set forth the due process analysis and held that the nonresident defendant must have some minimum contact with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Court quantified the necessary "minimum contacts" as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1240. The Court further elaborated on the purposeful acts required in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985), where it noted that:

> [j]urisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there....

Moreover, in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court examined the relationship between the defendant, the forum and the litigation to determine if it would be "reasonable" to require the defendant to defend a suit in the forum state.

■ The Supreme Court has recognized two forms of personal jurisdiction: general and specific. "General jurisdiction" over the defendant exists if the defendant has "continuous and systematic" contacts with the forum, even though those contacts have no relation to the underlying controversy. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872, n. 9, 80 L.Ed.2d 404 (1984). When a defendant does not conduct business generally in the forum state but has transacted some business there, a court may exercise "specific jurisdiction" when the defendant's contacts with the forum are related to the controversy and these contacts reach a "minimum" threshold. *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580 (7th Cir.1994). When the controversy does not arise out of the defendant's contacts with the forum, specific jurisdiction is lacking.

In light of these decisions, the Seventh Circuit has counseled that there exists no touchstone for personal jurisdiction. "[T]he sufficiency of minimum contacts cannot be determined by any set formula or rule of thumb, but 'must rest on a consideration of what is fair and reasonable in the circumstances of each particular case.'" *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1213 (7th Cir.1984) (quoting *Telco Leasing, Inc. v. Marshall County Hosp.,* 586 F.2d 49, 50 (7th Cir.1978)). "In determining whether specific jurisdiction should be asserted over the defendant, the court should assess the relationship among the defendant, the forum, and the litigation." *Nucor Corp.,* 28 F.3d at 580.

■ The key question in this case is whether O'Hara's contacts with Indiana in connection with the Agreement and the Indiana Project satisfy the personal jurisdiction requirements. It is clear that no general jurisdiction exists over O'Hara because substantial contact is necessary for general jurisdiction, and this is a "fairly high standard in practice." *Wilson,* 916 F.2d at 1245; *accord Intermatic, Inc.,* 815 F.Supp. at 293. The only question is whether O'Hara's contacts with the forum are related to the current controversy and whether these contacts reach a "minimum" threshold and thus satisfy the requirements for specific jurisdiction.

O'Hara bases his motion to dismiss on two arguments. First, he contends that his contacts with Indiana have not been sufficient to reach any minimum threshold. In support of this, O'Hara submits his affidavit in which he testifies to a plethora of contact that he has *not* made with Indiana: for example, O'Hara states that he does not reside in Indiana, he has never owned real estate in Indiana, he has never maintained a bank account in Indiana, he has never advertised in Indiana, and he has never been listed in any Indiana phone directories. However, O'Hara does not submit any evidence to counter Plaintiffs' assertions about the extent of contact O'Hara had with Indiana in connection with the subject matter of the instant controversy. O'Hara should have reasonably anticipated being sued in Indiana because his contacts with Indiana were not "random, fortuitous or attenuated." *Fidelity Financial Services, Inc.*, 640 N.E.2d at 399 (citation omitted); *see Nucor Corp.*, 28 F.3d at 581 ("[t]his circuit and others have found that a defendant's participation in substantial preliminary negotiations conducted in the forum state leading to the contract in issue is a sufficient basis for personal jurisdiction") (citations omitted).

Additionally, O'Hara argues that all contacts he had with Indiana relating to the subject matter of the instant lawsuit were solely in his capacity as a corporate officer and representative; based on this, O'Hara contends, the fiduciary shield doctrine should protect him from being subject to the Court's exercise of personal jurisdiction. The fiduciary shield doctrine holds that a corporate employee, who acted in a fiduciary capacity in the forum acted for the corporation and not herself; thus, a court cannot base long-arm jurisdiction over the employee for those acts. At least one Indiana case, *Ryan v. Chayes Virginia, Inc.*, 553 N.E.2d 1237 (Ind. App.), *reh'g denied* (1990), has adopted the fiduciary shield doctrine.

The fiduciary shield doctrine does not save O'Hara from this Court's exercise of personal jurisdiction. In *Intermatic, Inc.*, Judge McKinney, in a thoroughly researched opinion, rejected the holding of *Ryan* and con-

cluded that "if faced with the decision, the Supreme Court of Indiana would decline to adopt the fiduciary shield doctrine and would not follow the decision of the Court of Appeals of Indiana in *Ryan*." 815 F.Supp. at 296. Additionally, the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487–88, 79 L.Ed.2d 804 (1984), strongly suggests that the fiduciary shield doctrine is now defunct.[4] Therefore, O'Hara has not proven that he is not subject to this Court's specific personal jurisdiction for purposes of the instant action.

### III. CONCLUSION

For the reasons stated above, O'Hara's motion to dismiss for lack of personal jurisdiction is denied.

It is so ORDERED.

---

4. The Court noted that "[p]etitioners are correct that their contacts with [the forum state] are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." 465 U.S. at 790, 104 S.Ct. at 1487.