CRYSTAL CLEAR OPTICAL, INC., APPELLANT, V. LAWRENCE M. SILVER, APPELLEE.

531 N.W.2d 535

Filed May 12, 1995.   No. S-93-893.

Frederick S. Cassman, of Abrahams, Kaslow & Cassman, for appellant.

Kermit A. Brashear and Donald J. Straka, of Brashear & Ginn, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and CORRIGAN, D.J.

LANPHIER, J.

Crystal Clear Optical, Inc. (Crystal Clear), filed an action against Lawrence M. Silver, seeking a money judgment allegedly owed to Crystal Clear by National Consolidated Industries, Ltd. (NCI), a foreign corporation. Silver is alleged to have been the principal shareholder and officer of NCI and is alleged to have done acts which Crystal Clear claims should result in disregarding the corporate veil and holding Silver personally liable. The district court for Douglas County dismissed Crystal Clear's petition for lack of personal jurisdiction over Silver, on the ground that Crystal Clear failed to prove a prima facie case for piercing the corporate veil of NCI. We affirm the judgment of the district court on other grounds.

## I. FACTUAL BACKGROUND

Crystal Clear is a Nebraska corporation engaged in the manufacture and processing of optical lenses. Crystal Clear's principal place of business is Omaha, Nebraska. The record indicates neither NCI's place of incorporation nor its principal place of business, but it is apparent from the record that neither is in Nebraska. The record reflects that from June 1990 through March 1993, NCI purchased thousands of items from Crystal Clear at a cost of over $250,000. Crystal Clear brought this action to recover $16,682.47 allegedly still owed to it by NCI.

Crystal Clear sued Silver rather than NCI because it claimed that NCI was Silver's alter ego. In its petition, Crystal Clear alleged that Silver was NCI's principal shareholder and officer. Crystal Clear also claimed that Silver formed and continued to operate NCI with inadequate capital and that Silver commingled and utilized NCI's assets and revenues for his own personal use. Crystal Clear alleged that, in order to hinder and defraud Crystal Clear from collecting amounts due from NCI, Silver diverted all of NCI's assets to himself when NCI became insolvent.

On June 14, 1993, Silver filed a special appearance to challenge the district court's jurisdiction. A hearing on the

special appearance took place on August 2. Evidence was adduced in the forms of affidavits and exhibits. Crystal Clear offered the affidavit of its president, G. David Wormington, wherein Wormington restated the allegations in Crystal Clear's petition and claimed that he had personal knowledge of that information. Exhibit A attached to Wormington's affidavit states that Silver filed a security interest in all of NCI's accounts, inventory, equipment, general intangibles, contract rights, instruments, documents, chattel paper, and all proceeds, products, and accessions of and to that collateral. The filing instrument did not recite what consideration Silver had given to NCI in return for the security interest.

In addition to Wormington's affidavit and the security interest, Crystal Clear also offered into evidence numerous statements of NCI's account, detailing each purchase NCI made from Crystal Clear, as well as a monthly summary of NCI's account activity.

Silver's evidence at the special appearance hearing consisted of three affidavits: two from Silver and one from Patricia Tracy, NCI's chief operating officer and executive vice president from June 1990 to July 1992. In his affidavit, Silver stated that NCI incorporated in 1971, but denied that he was the incorporator. Silver stated that he became a minority shareholder in NCI on April 22, 1991. From June 1990 through July 1992, Silver reported that he served on NCI's board of directors, but not as an officer. During that same time period, Silver claimed that he was not involved in the day–to–day business of NCI and that he never had any contact with anyone from Crystal Clear. Silver stated that Tracy was responsible for transacting any and all business with Crystal Clear. Silver denied ever commingling NCI funds with his own or diverting NCI funds for his own personal use. Silver stated that NCI employed up to 40 people from June 1990 to July 1992.

Tracy testified that she oversaw all of NCI's business with Crystal Clear and that any such business was conducted via telephonic communication, overnight carriers, and U.S. mail. Tracy stated that an NCI employee, under Tracy's supervision, placed purchase orders with Crystal Clear. According to Tracy, NCI never had an office, bank account, telephone listing, sales

representative, or real property in Nebraska. Furthermore, Tracy stated that no officers, directors, or employees from NCI ever entered Nebraska to conduct business with Crystal Clear.

The district court sustained NCI's special appearance on September 8, 1993, holding that Crystal Clear failed to allege sufficient facts in its petition to establish a cause of action to pierce the corporate veil of NCI and therefore failed to show that the district court had jurisdiction over Silver. The district court dismissed Crystal Clear's petition on September 29.

## II. ASSIGNMENTS OF ERROR

Crystal Clear contends that the district court erred in (1) finding that Crystal Clear failed to establish a cause of action to pierce the corporate veil of NCI and (2) sustaining NCI's special appearance and dismissing Crystal Clear's petition.

## III. STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court; however, when the determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *State ex rel. Grape v. Zach, ante* p. 29, 524 N.W.2d 788 (1994); *Bradley v. Hopkins*, 246 Neb. 646, 522 N.W.2d 394 (1994). The burden of proof rests upon the plaintiff confronted with a special appearance to demonstrate the court's personal jurisdiction over the defendant. *Wagner v. Unicord Corp., ante* p. 217, 526 N.W.2d 74 (1995); *Williams v. Gould, Inc.*, 232 Neb. 862, 443 N.W.2d 577 (1989).

## IV. ANALYSIS

### 1. Nebraska Long–Arm Statute

Before a court can exercise personal jurisdiction over a nonresident defendant, the court must, first, determine whether the long–arm statute is satisfied, and, if the long–arm statute has been satisfied, second, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.

*Williams v. Gould, Inc., supra.* Nebraska's long–arm statute, Neb. Rev. Stat. § 25–536 (Reissue 1989), provides:

A court may exercise personal jurisdiction over a person:

(1) Who acts directly or by an agent, as to a cause of action arising from the person:

(a) Transacting any business in this state;

(b) Contracting to supply services or things in this state;

(c) Causing tortious injury by an act or omission in this state;

(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;

(e) Having an interest in, using, or possessing real property in this state; or

(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or

(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

In addressing the special appearance in the case at bar, it is necessary to consider the breadth of the long–arm statute. *Wagner v. Unicord Corp., supra.* Section 25–536(2) expressly extends Nebraska's jurisdiction over nonresidents as far as the U.S. Constitution permits. *Wagner v. Unicord Corp., supra.* Accord *Barone v. Rich Bros. Interstate Display Fireworks*, 25 F.3d 610 (8th Cir. 1994), *cert. denied, Hosoya Fireworks Co., Ltd. v. Barone*, ___ U.S. ___, 115 S. Ct. 359, 130 L. Ed. 2d 313. Therefore, we need only address whether Silver had such minimum contacts with Nebraska that the exercise of personal jurisdiction would not offend federal constitutional principles. See *Wagner v. Unicord Corp., supra.*

## 2. DISTRICT COURT'S DECISION

### (a) Fiduciary Shield Doctrine

In the instant case, the only allegations made by Crystal

Clear as to Silver's contacts with Nebraska relate to contacts allegedly conducted through NCI. Crystal Clear assigns as error the district court's decision not to pierce the corporate veil of NCI in order to reach Silver. Under Nebraska law, the district court did not need to determine whether or not to pierce NCI's corporate veil in order to determine if the court had jurisdiction over Silver.

The district court, in finding that it did not have jurisdiction over Silver, apparently mistakenly applied the precepts of the "fiduciary shield doctrine" in its analysis. Under the fiduciary shield doctrine, personal jurisdiction over a corporate agent or employee cannot be based on jurisdiction over the corporation for which the fiduciary acts, when the individual's activities in the forum state are conducted solely as the agent or employee of the corporation. *McGowan Grain v. Sanburg*, 225 Neb. 129, 403 N.W.2d 340 (1987). See, also, *Davis v. Metro Productions, Inc.*, 885 F.2d 515 (9th Cir. 1989); *Nat. Precast Crypt Co. v. Dy-Core of Pa., Inc.*, 785 F. Supp. 1186 (W.D. Pa. 1992); *Alpert v. Bertsch*, 235 Ill. App. 3d 452, 601 N.E.2d 1031 (1992), *appeal denied* 148 Ill. 2d 639, 610 N.E.2d 1259 (1993). Therefore, in order to assert personal jurisdiction over a foreign corporate agent or employee in a state recognizing the fiduciary shield doctrine, the plaintiff must prove a prima facie case to pierce the corporate veil in order to reach the individual defendant. *Davis v. Metro Productions, Inc., supra*; *Nat. Precast Crypt Co. v. Dy-Core of Pa., Inc., supra*.

In *McGowan Grain v. Sanburg, supra*, this court rejected the fiduciary shield doctrine as a bar to jurisdiction. *McGowan Grain* involved a breach of contract action brought by a Nebraska corporation against two agents from a Kansas corporation. The defendants in *McGowan Grain* argued that the Nebraska district court could not exercise personal jurisdiction over them because they were protected by the fiduciary shield doctrine. This court held that the fiduciary shield doctrine is irrelevant to determining whether personal jurisdiction existed:

> In disposing of the contention that the fiduciary shield doctrine precludes personal jurisdiction, we believe that, while such doctrine may have a bearing on substantive liability in some jurisdictions, we must agree with the statement: "Ignoring any notion that acting in a corporate

capacity somehow provides the defendant with a jurisdictional shield eliminates unfairness to the plaintiff and permits a systematic application of jurisdictional principles as they are applied in other contexts." [Citation omitted.] We neither state nor imply that an employee of a corporation may be subjected to personal jurisdiction in any state where the corporate employer does business. However, if a defendant's contacts satisfy the standards imposed by the forum state's long-arm statute and the requirements of due process, the fiduciary shield doctrine does not prevent personal jurisdiction. Rather than misplaced emphasis on the fiduciary shield doctrine as a bar to personal jurisdiction, "the primary focus should be on the defendant's activities without regard to the role in which these activities were entered into. If such activities satisfy minimum contacts analysis, personal jurisdiction should be obtained."

*Id.* at 144–45, 403 N.W.2d at 350.

Under *McGowan Grain*, when a corporate agent or employee is sued in Nebraska for acts committed in the course and scope of the defendant's employment in the corporation, the question of whether the Nebraska courts have personal jurisdiction over the corporation is irrelevant, unless, of course, the corporation is named as a party to the action. In the case at bar, *McGowan Grain* dictates that the court need not find grounds for piercing the corporate veil in order to exercise personal jurisdiction over Silver. For the purpose of determining whether or not it has personal jurisdiction over Silver, the court should determine whether Silver himself had sufficient minimum contacts with Nebraska to satisfy federal due process requirements. See *id.* Accord, *Dakota Industries, Inc. v. Ever Best Ltd.*, 28 F.3d 910 (8th Cir. 1994); *Davis v. Metro Productions, Inc., supra.*

(b) Effect of *McGowan Grain*

The district court dismissed this case because it found that Crystal Clear "failed to allege in its Petition facts sufficient to establish a cause of action to pierce the corporate veil of [NCI], and thereby subjecting the Defendant to the jurisdiction of this Court." Per *McGowan Grain*, Crystal Clear's failure to allege

facts sufficient to pierce the corporate veil of NCI was irrelevant to determine whether or not the district court had jurisdiction over Silver.

The district court apparently stopped its analysis after concluding that Crystal Clear had to pierce the corporate veil of NCI in order to assert personal jurisdiction over Silver. It therefore apparently never reached the question of whether Silver himself had sufficient minimum contacts with the state.

We review the record de novo to determine whether Crystal Clear satisfied its burden of proving that Silver had sufficient minimum contacts with Nebraska to justify the district court's taking personal jurisdiction over him.

### 3. PERSONAL JURISDICTION OVER SILVER

The only evidence Crystal Clear offered to prove that Silver had sufficient minimum contacts with the state is the following statement from Wormington's affidavit:

> During the period from June 1990 to March 1992, Silver caused NCI to submit a vast number of separate purchase orders by fax, mail and telephone to Crystal Clear in Nebraska for the manufacturing and processing of optical lenses. Attached hereto as Exhibit "B" is a Summary of the account with accompanying statements.

Exhibit B contains a monthly summary of purchases NCI made from Crystal Clear, but nothing in that exhibit or in any of the other evidence submitted by Crystal Clear supports the conclusory allegations contained in Wormington's affidavit that Silver "caused" the orders. As detailed above, Silver submitted into evidence his and Tracy's affidavits, denying that Silver had any contact with Nebraska, either personally or through his work with NCI. We find, as a matter of law, that Crystal Clear failed to meet its burden of proving that Silver had sufficient minimum contacts with Nebraska.

The district court apparently held that Crystal Clear had to allege a prima facie case to pierce the corporate veil of NCI in order to satisfy its burden of proving that Silver was subject to the personal jurisdiction of the district court. Although such holding was incorrect, the district court correctly found that Crystal Clear failed to meet its burden of presenting facts to

demonstrate that the district court could properly exercise personal jurisdiction over Silver.

Where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the appellate court will affirm. *Schlake v. Jacobsen*, 246 Neb. 921, 524 N.W.2d 316 (1994); *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994); *In re Estate of Trew*, 244 Neb. 490, 507 N.W.2d 478 (1993).

AFFIRMED.