COUSINS SUBS SYSTEMS, INC., Plaintiff,

v.

Michael R. McKINNEY, Defendant/Third–Party Plaintiff,

v.

David K. Kilby and Daniel J. Sobiech, Third–Party Defendants.

No. 98–C–550.

United States District Court, E.D. Wisconsin.

Aug. 5, 1999.

Frederick Cohen, Mark Schmitt, for plaintiff.

Richard Carlson, for defendant.

## ORDER

ADELMAN, District Judge.

This is a diversity action arising out of a dispute between the parties to a franchise agreement. Plaintiff, Cousins Subs Systems, Inc. ("Cousins"), a Wisconsin company, entered into several agreements with defendant, Michael R. McKinney, a Minnesota businessman, for McKinney to operate Cousins submarine sandwich shops in northern Minnesota and Wisconsin. McKinney owns the Best Oil Company, which operates a chain of gas station/convenience stores known as The Little Stores, in which the Cousins shops were placed.

On June 12, 1998, Cousins filed this lawsuit alleging that McKinney sold Cousins products and used Cousins confidential techniques in unauthorized ways, failed to pay fees owed to Cousins and wrongfully terminated his agreements with Cousins. On June 19, 1998, McKinney filed a separate suit against Cousins in Minnesota state court. Ultimately, McKinney's state court action was dismissed. McKinney also filed a counterclaim and third-party complaint in this case, alleging a number of claims against Cousins and its sales representatives, David K. Kilby and Daniel J. Sobiech. These claims include (1) violation of the Minnesota Franchise Law; (2) breach of fiduciary duty; (3) fraud; (4) breach of an implied duty of good faith and fair dealing; and (5) breach of contract. Cousins then moved to dismiss McKinney's counterclaim and third-party complaint. This decision addresses Cousins's motion to dismiss.

## I. FACTUAL BACKGROUND

In 1995 McKinney and Cousins began discussing the possibility of McKinney becoming a Cousins franchisee and area developer. Following negotiations and correspondence involving the parties and their lawyers, on May 9, 1996, McKinney and Cousins entered into an agreement for McKinney to operate a Cousins franchise in Carlton, Minnesota. Also on May 9, 1996, the parties signed an area development agreement authorizing McKinney to oversee the development of other franchises in the area. On January 7, 1997, the parties entered into an agreement for McKinney to operate a franchise in Superior, Wisconsin. Subsequently, however, McKinney became disillusioned with the arrangement, and on April 9, 1998, he notified Cousins that he was terminating all the agreements.

In his counterclaim and third-party complaint, McKinney's specific allegations are that Sobiech guaranteed that "annual sales

at each of McKinney's franchises would range from $250,000 to $500,000 per franchise" (Countercl.¶ 9), that Cousins promised to "provide advertising ... in excess of the amount paid by McKinney" (Countercl.¶ 11), and that "Cousins expressly guaranteed and promised to provide extensive assistance in recruitment of other franchisees" (Countercl.¶ 12). McKinney alleges that these promises were not kept. McKinney also alleges that Cousins "dictated unrealistic pricing of whole subs and/or other products and threatened to hold up shipments of product if McKinney failed to comply with the unreasonable and unauthorized demands." (Countercl.¶ 23.) McKinney attached to his pleadings copies of the Uniform Franchise Offering Circular (Countercl., Ex. 1), the Franchise Agreement (Countercl., Ex. 1B), and the Area Development Agreement (Countercl., Ex. 1C). These documents all contain language relevant to McKinney's allegations.

## II. APPLICABLE LAW

### A. Motion to Dismiss Standard

Cousins moves to dismiss McKinney's counterclaim and third-party complaint under Fed.R.Civ.P. 12(b)(6), for failure to state a claim. A complaint, or portion thereof, must be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff cannot adduce facts that would entitle him to relief under that legal claim. See *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In reviewing a complaint under this standard, the court accepts as true the plaintiff's allegations, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), and construes the pleadings in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). When the exhibits attached to the pleading contradict the allegations in the complaint, the

exhibits control. *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir.1991).

### B. Applicable Substantive Law

Both the Uniform Franchise Offering Circular and the Franchise Agreement provide that Wisconsin law governs this dispute but that some franchisees may also be protected by state franchise laws. (*See* Countercl., Ex. 1 at 3; Ex. 1B at 36.) The parties appear to agree that I should generally apply Wisconsin law but that I may also consider whether McKinney states a claim under the Minnesota Franchise Law. Of course, I am bound by Seventh Circuit precedent.

## III. DISCUSSION

There is considerable overlap between McKinney's claims and between the legal principles applicable to each claim. Nevertheless, I shall address the claims separately and in the sequence in which McKinney raised them.

### A. Minnesota Franchise Law

McKinney first contends that Cousins violated Minn.Stat. § 80C.13, subd. 2, which provides:

No person may offer or sell a franchise in this state by means of any written or oral communication which includes an untrue statement of a material fact or which omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

McKinney does not clearly delineate his theory as to how this statute was violated. He appears to assert that Cousins violated this statute by making untrue oral representations to him about how much money he would make and about how much advertising and recruitment assistance it would provide.

█ The main problem with this claim and, for that matter, with all of McKin-

ney's claims is that the oral promises allegedly made by Cousins are directly contradicted by the written terms of the agreements that he signed and attached as exhibits to his pleadings. Where the allegations of a complaint are inconsistent with the terms of a written contract attached as an exhibit, the terms of the contract prevail over the averments differing therefrom. *Graue Mill,* 927 F.2d at 991; *Foshee v. Daoust Const. Co.,* 185 F.2d 23, 25 (7th Cir.1950); *see also Bell v. Lane,* 657 F.Supp. 815, 817 (N.D.Ill.1987) (where exhibits attached to complaint negate its allegations, court is not required to credit unsupported allegations). Unfortunately for McKinney, every oral representation that he alleges was made by Cousins is inconsistent with the written contracts he signed or the written circular he received.

McKinney alleges first that Cousins through Sobiech orally guaranteed that annual sales at McKinney's franchises would be between $250,000 and $500,000, and that this level of sales was not realized. However, the Area Development Agreement states that McKinney "has not received any warranty or guaranty, express or implied, as to the potential volume, profits, or success of the business venture." (Countercl., Ex. 1C at 26.) The Franchise Agreement contains virtually identical language. (Countercl., Ex. 1B at 39.) Thus, McKinney's claim of guaranteed profits is directly contradicted by the written contracts. McKinney also claims that Cousins promised to provide "advertising ... in excess of the amount paid by McKinney" (Countercl.¶ 11), and that Cousins failed to do so. But the Uniform Franchise Offering Circular states that "Cousins is not obligated to spend any specific amounts on advertising in the area where a particular franchisee is located ..." (Countercl., Ex. 1 at 31.) Thus, this claim too is directly contradicted by the written language of an exhibit. McKinney next alleges that Cousins "expressly guaranteed and promised to provide extensive assistance in recruitment of other franchi-

sees in the development area" (Countercl.¶ 12), but that such assistance was not forthcoming. The Area Development Agreement, however, states, with respect to the recruitment issue, that "AREA DEVELOPER shall be responsible for advertising for, recruiting and screening prospects for SHOPS within the Exclusive Area." (Countercl., Ex. 1C at 6.) Thus, every single oral promise that McKinney asserts was made by Cousins is inconsistent with the documents appended to his complaint. Under Seventh Circuit case law the language of the exhibits prevails.

McKinney's claims are further undermined by other language in the agreements. The area development and franchise agreements each contain integration clauses which expressly disavow any promises not included in the written agreements between the parties. (*See* Countercl., Ex. 1C at 24; Ex. 1B at 36.) The Area Development Agreement, for example, states that "this Agreement ... constitutes the entire agreement of the parties, and there are no other oral or written understandings or agreements ... relating to the subject matter of this agreement." (Countercl., Ex. 1C at 24.)

■ Finally, McKinney's attempt to invoke alleged oral agreements to contradict the terms of the written agreements is barred by the parol evidence rule which is embodied in Wis.Stat. § 402.202. The parol evidence rule prohibits the use of oral agreements of the type McKinney relies on to contradict written contracts if the written contract is intended by the parties to be the final expression of their agreement. The presence of the integration clauses in the written agreements makes clear that the contracts were intended to embody all of the agreed on terms. Thus, the parol evidence rule presents another fundamental bar to all of McKinney's claims.

McKinney cannot prevail on his claim under the Minnesota statute unless, in offering him a franchise, Cousins made an

untrue statement of material fact. Cousins offered the franchises to McKinney through the written franchise documents, not through the alleged oral promises which are inconsistent with the exhibits. And the written documents do not contain untrue statements of material fact or omissions of material facts, nor does McKinney claim that they do. Therefore, McKinney's claim that the Minnesota Franchise Act was violated fails.

McKinney attempts to bolster his claim by referring in his pleadings to a questionnaire that he filled out, purportedly raising questions as to whether promises were made by Cousins employees contrary to the written contracts. However, this argument is unpersuasive. First, McKinney filled out the questionnaire prior to signing the contracts which expressly disavow oral promises of the type that he relies on. Second, McKinney acknowledges in his pleadings that Cousins gave him the opportunity to clarify his answers to the questionnaire but that he never bothered to respond to the Cousins inquiry. Third, six months after filling out the questionnaire, McKinney signed a second franchise agreement and again acknowledged that no promises had been made to him other than those contained in the document.

In sum, McKinney is an experienced businessman who made a deal which turned out to be less favorable than he anticipated. McKinney expressly acknowledged in detailed written agreements negotiated with the assistance of counsel that his purchase of a franchise was not a risk-free endeavor. He now makes allegations that are directly contrary to the agreements he signed. For the reasons stated, his claim under the Minnesota statute fails.

## B. Breach of Fiduciary Duty

■ McKinney's second claim is that Cousins breached a fiduciary duty to him. The Seventh Circuit has held that under Wisconsin law a franchisor owes no fiduciary duty to a franchisee. *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 354 (7th Cir.1982). In *Murphy* the court stated that the district court "correctly determined that there was no legal basis for the argument that [the franchisor] owed a fiduciary duty to the plaintiffs." The Seventh Circuit went on to say that except in the case of franchise termination "the courts have refused to impose fiduciary obligations on franchisors." *Id.* Therefore, Cousins owed no fiduciary duty to McKinney, and McKinney's claim that such a duty was breached is without merit.

McKinney's claim of breach of fiduciary duty must be dismissed for another reason. McKinney expressly acknowledged in the Franchise Agreement that no fiduciary relationship existed. The Agreement states "[i]t is understood and agreed by the parties hereto that this Agreement does not create a fiduciary relationship between them." (Countercl., Ex. 1B at 36.)

## C. Fraud

■ In Wisconsin, a claim of intentional misrepresentation consists of five elements: (1) defendant made a representation of fact; (2) such representation was untrue; (3) defendant made such a representation knowing it was untrue or recklessly, without caring whether it was true or false; (4) defendant made the representation with the intent to deceive and induce plaintiff to act upon it to plaintiff's pecuniary damage; and (5) plaintiff believed such representation to be true and relied on it. *Lundin v. Shimanski*, 124 Wis.2d 175, 368 N.W.2d 676 (1985). Generally, statements of fact must relate to present or preexisting facts, not something to occur in the future. *Hartwig v. Bitter*, 29 Wis.2d 653, 139 N.W.2d 644 (1966). An exception to the preexisting fact rule exists, however, where the promisor, at the time the promise was made, had a present intention not to perform. *Hartwig*, 29 Wis.2d at 658, 139 N.W.2d 644; *see also Badger Pharmacal, Inc. v. Colgate–Palmolive Co.*, 1 F.3d 621, 628 n. 7 (7th Cir.1993).

McKinney's common law fraud claim fails for the same reasons that his claim under the Minnesota Franchise Law's statutory prohibition of fraud fails. The oral statements on which his fraud claim depends are directly contradicted by the agreements he signed. As previously discussed, when allegations in a pleading are inconsistent with the exhibits attached to the pleading, the exhibits prevail. *Graue Mill,* 927 F.2d at 991; *Foshee,* 185 F.2d at 25. Further, the alleged oral agreements are barred by the parol evidence rule. All of the alleged oral statements asserted by McKinney to support his claim for fraud—the alleged guarantee of profits and the alleged promises of advertising and recruitment assistance—are inconsistent with the contracts. The contracts include none of the alleged promises and, in fact, expressly disavow them. Thus, McKinney's claim for fraud also fails.

■■■■ It is worth noting that even if McKinney had not submitted written documents contradicting his claims his fraud claim could not survive. McKinney alleges that Cousins made promises about his future profits and about its own future advertising and recruitment commitments. Statements about future performance are not considered statements of fact and are not usually actionable under a fraud theory. *Loula v. Snap–On Tools Corp.,* 175 Wis.2d 50, 54–55, 498 N.W.2d 866 (Ct.App. 1993). And McKinney does not include in his pleadings language adequate to bring the claim within the exception to the preexisting fact rule. Specifically, he fails to allege that Cousins did not intend to honor the promises at the time they were made. Claiming only that the promises were not kept is insufficient to satisfy the exception. *Hartwig,* 29 Wis.2d at 658, 139 N.W.2d 644.

## D. Breach of Duty of Good Faith and Fair Dealing

■■■■ McKinney contends that Cousins breached its duty of good faith and fair dealing. A duty of good faith and fair dealing is an implied condition in every contract and imposes a duty of cooperation on the part of both parties and an obligation to act honestly. *See generally In re Estate of Chayka,* 47 Wis.2d 102, 107–08, 176 N.W.2d 561 (1970). However, the duty imposes a relatively limited obligation on the parties and is not a basis for creating rights not expressly included in the contract. The Seventh Circuit underscored the limited nature of this duty when it stated that good faith "is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357 (7th Cir.1990). The Seventh Circuit recently concluded that under Wisconsin law a party seeking to show a breach of the duty of good faith and fair dealing as understood in *Chayka* "must show something that can support a conclusion that the party accused of bad faith has actually denied the benefit of the bargain originally intended by the parties." *Zenith Ins. Co. v. Employers Ins. of Wausau,* 141 F.3d 300 (7th Cir.1998) (citing *Foseid v. State Bank of Cross Plains,* 197 Wis.2d 772, 541 N.W.2d 203 (Ct.App.1995); *Schaller v. Marine Nat'l Bank of Neenah,* 131 Wis.2d 389, 388 N.W.2d 645 (Ct.App.1986)).

As previously set forth, where McKinney's claims are inconsistent with his exhibits, the exhibits prevail. Moreover, where a written contract is intended to be the final expression of an agreement it may not be contradicted by contemporaneous oral agreements. Based on the written contracts McKinney alleges no facts from which it could be inferred that Cousins breached the duty of good faith and fair dealing as understood in *Chayka.* McKinney alleges nothing that could support the conclusion that Cousins denied him the benefit of the bargain agreed upon in writing by the parties. Thus, this claim also fails.

### E. Breach of Contract

Finally, McKinney alleges that Cousins breached its contracts by not delivering on its oral promises of profits, advertising and recruitment assistance. As I have stated, the alleged oral promises are inconsistent both with specific language in the agreements and with the language of the integration clauses. Thus, breach of contract claims based on these alleged promises fail.

■ McKinney also claims that Cousins violated the franchise agreement in that it "dictated unrealistic pricing of whole subs and/or other products and threatened to hold up shipments of product if McKinney failed to comply ..." (Countercl.¶ 23.) The agreement provides that Cousins:

> may from time to time advise or offer guidance to Franchisee relative to prices for the products and services offered for sale by the SHOP that in the FRANCHISOR's judgment constitute good business practice. Such prices will be based on the experience of franchisor and its franchisees in operating COUSINS SUB shops and an analysis of the costs of such products and prices charged for competitive products. FRANCHISEE shall not be obligated to accept any such advice or guidance and shall have the sole right to determine the prices to be charged from time to time by the SHOP and no such advice or guidance shall be deemed or construed to impose on FRANCHISEE any obligation to charge any fixed, minimum or maximum prices for any product offered for sale by the SHOP.

(Countercl., Ex. 1B at 13.) McKinney's claim that Cousins "dictated" prices is belied in two respects. First, under the agreement McKinney was under no obligation to charge any prices suggested by Cousins, as this language demonstrates. Second, McKinney does not allege that he actually charged prices dictated by Cousins. The same problems beset McKinney's claim that Cousins threatened to hold up shipments of product. McKinney does not allege either that he submitted to Cousin's pricing suggestions or that Cousins actually held up any product. Thus, McKinney's pleadings do not allege that Cousins actually breached the contract, and his breach of contract claim also fails.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Cousin's motion to dismiss McKinney's counterclaim and third-party complaint is **GRANTED.**