In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1562

Hardin Roller Corporation,

Plaintiff-Appellee,

v.

Universal Printing Machinery, Inc.,

Defendant,

and

Joseph Yukich,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:95-CV-213-TS--Theresa Springmann, Magistrate Judge.

Argued October 26, 2000--Decided January 3, 2001

Before Easterbrook, Kanne, and Evans, Circuit Judges.

Easterbrook, Circuit Judge.  Hardin Roller, which sells large printing presses and related equipment, is based in Wisconsin. In years past Hardin Roller hired Universal Printing Machinery, based in Indiana, to recondition and install some presses. Joseph Yukich, who owned a majority of Universal's stock and also operated a proprietorship that supplied parts to Universal's business, often visited Wisconsin to find printing gear, negotiate on Universal's behalf, and repair or install presses. Relations between Hardin and Universal soured in 1992, when Universal demanded additional compensation for installing a press on Hardin's behalf in Italy, then walked off the job (leaving the customer with an incomplete installation) when Hardin did not pay. Later that year Hardin and Universal reached a compromise that was supposed to wrap up their business relationship: Hardin agreed to give Universal title to four large presses, and Universal agreed to pay Hardin $425,000. Yukich personally disassembled one of the presses in Wisconsin and had it shipped to Indiana. Universal soon possessed all four presses. Yukich then cut communications with Hardin, and

Universal did not keep its part of the bargain.

A suit ensued in Wisconsin court. Despite receiving service of process, Yukich did not answer the complaint. Universal, which did appear, denied that it was subject to personal jurisdiction there but otherwise offered no defense. The Wisconsin court, after concluding that it had jurisdiction over both Universal and Yukich, entered judgment in Hardin's favor. Universal and Yukich ignored the judgment, leading Hardin to file an enforcement action in Indiana, this time in federal court under the diversity jurisdiction. Both Universal and Yukich defended on the ground that the Wisconsin court had lacked jurisdiction--the only available ground of collateral attack. See Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc., 212 F.3d 1031 (7th Cir. 2000). A magistrate judge, presiding by consent under 28 U.S.C. sec.636(c), soon held that the Wisconsin court's determination that it had jurisdiction over Universal is entitled to full faith and credit. But Yukich, who had disdained the Wisconsin litigation, remained free to contest that court's decision. Three years of discovery and motions practice followed. Eventually the magistrate judge granted summary judgment in Hardin's favor, ruling that Yukich's business visits to Wisconsin, and his economic activities with predictable consequences, had subjected him to jurisdiction under the terms of Wisconsin's long-arm statute, Wis. Stat. sec.801.05. Application of this statute, the magistrate judge held, is consistent with the due process clause of the fourteenth amendment. A final judgment entered in 1999 obliged both Universal and Yukich to pay the Wisconsin judgment, plus interest that has been accruing since 1995. Yukich has appealed; Universal has not.

Yukich's lead argument--that he lacked sufficient contacts with Wisconsin to support jurisdiction under either state law or the federal Constitution--is feeble. We have recited undisputed facts; Yukich insists that some circumstances surrounding his business in Wisconsin are in dispute, but the visits themselves are established. What is more, Yukich rather than Hardin bears the burden of persuasion, because it is Yukich who wants collateral relief from a presumptively valid judgment. Yukich proceeds on appeal as if jurisdiction depended on the single message from Italy (and the Italian customer's decision not to pay Hardin until the work had been completed). But it does not. Yukich often visited Wisconsin, not only to carry on Universal's business but also to conduct his own affairs as the proprietor of a used-parts business. He communicated to

Wisconsin when he was not there physically. He sent remittances to, and received payments from, Hardin in Wisconsin. As part of the 1992 settlement, Yukich personally disassembled a printing press in Wisconsin and had it shipped to Indiana, then reneged on the bargain once he had its benefits. Wisconsin is no less appropriate a forum than Indiana for litigation about the dealings between Hardin and Yukich, and the due process clause does not block a state from adjudicating claims among persons who have had long-term business relations that occur, in part, within its borders. Helicopteros Nationales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984). Yukich was eager to travel to Wisconsin to make money; it is equally appropriate that he litigate in Wisconsin concerning the obligations incurred during these trips and the associated business deals.

As a back-up argument, Yukich contends that the fiduciary-shield doctrine prevents haling him as an individual into Wisconsin court, when all his activities in that state occurred as an agent of Universal. The fiduciary-shield doctrine makes it easier for businesses to hire agents, who need not fear that they put their personal wealth at stake in every jurisdiction that they visit on the firm's behalf. Their wealth still is at stake if they commit wrongs, but the doctrine offers the convenience of litigating closer to home. This way of stating the doctrine's effect implies that it was much more important a century ago, when travel was costly and time-consuming, than it is today, when cities 1,000 miles away are almost as easy to reach as cities 200 miles away, and when a bar with offices (or arrangements with local counsel) across the country insulates clients from much concern about the location of the courthouse.

Calder v. Jones, 465 U.S. 783, 790 (1984), and Keeton v. Hustler Magazine, 465 U.S. 770, 781 n.13 (1984), establish that the Constitution does not shield persons who act as corporate agents from individual-capacity suits. Thus the fiduciary-shield doctrine is a matter of state law only, and many states do not employ it. See generally Sonja Larsen, Validity, Construction, and Application of "Fiduciary Shield" Doctrine-- Modern Cases, 79 A.L.R. (5th series) 587 (2000). Does Wisconsin? Never in that state's history have its courts applied the doctrine--but neither have they definitively rejected the possibility. See Pavlic v. Woodrum, 169 Wis. 2d 585, 486 N.W.2d 533 (App. 1992). One judge of this court believes that, when at last it must choose, Wisconsin will not adopt the doctrine. Steel Warehouse of Wisconsin, Inc. v. Leach, 154 F.3d 712, 716 n.2 (7th Cir. 1998) (Ripple, J.,

dissenting). But the hour of choice has not arrived--not only because we are not a Wisconsin court (by failing to appear in the Wisconsin suit, Yukich abandoned his opportunity to obtain a decision by Wisconsin's judiciary), but also because Yukich does not meet the requirements of states that use the doctrine.

One of the doctrine's conditions is that the person's business in the state be solely as a fiduciary of another person, who is liable as a principal. Yukich, however, appeared in Wisconsin both as Universal's agent and as principal of his own proprietorship. Every deal he negotiated in Wisconsin with Hardin was indirectly a sale of parts that Yukich supplied as proprietor. Yukich wore two hats in Wisconsin: as agent of Universal for remanufacturing and reconditioning presses, and as proprietor for the sale of parts that would be used in this process. Yukich filed an affidavit denying that he sold parts in Wisconsin in his own name; the wording is clever but avoids the point that he regularly transacted business in Wisconsin to advance his personal economic interest. What is more, Yukich was the principal owner, and at times the sole employee, of Universal. He never held in his own name less than 52% of Universal's stock; his wife owned a further 24%. Wisconsin would recognize corporate independence and not hold Yukich as shareholder liable for corporate debts; but it would press corporate form beyond the breaking point to suppose that Yukich and Universal were different entities for the purpose of liability on contracts Yukich personally negotiated or performed, or business torts Yukich personally committed.

To put this otherwise, Universal did not need to offer Yukich assurance of immunity from personal liability in other states to get him to act as its agent; Yukich was Universal for practical purposes. It was the lure of profit from the firm's total operations, not a fixed salary, that induced Yukich to attend to Universal's business. As the principal residual claimant to Universal's net income, Yukich did not need--and we predict that Wisconsin would not extend--protection from individual-capacity actions in jurisdictions where Universal itself was exposed to suit. See In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 750 F. Supp. 330 (N.D. Ill. 1990) (Illinois, a state employing the fiduciary-shield doctrine, would not use it to protect the principal investors in closely held corporations). Residual claimants feel the pinch personally even when the corporation is the only named party, and the only function of the fiduciary-shield doctrine for a residual claimant would be to facilitate evasion

if the corporation should become judgment proof.

Yukich made this pellucid when he caused Universal to go out of business in 1996--after years of ignoring the Wisconsin judgment, and after this enforcement litigation was under way. Yukich reaped the benefit of Universal's profitable business, caused Universal not to pay the judgment in Hardin's favor, took steps making it unlikely that Universal would be able to satisfy that judgment, and now wants us to say that because he acted in Wisconsin as a mere agent for Universal he, too, may ignore the Wisconsin judgment. Judgments are not so easily evaded, or Wisconsin's courts so easily bamboozled.

Affirmed