NORKOL/FIBERCORE, INC. and P & M Services, Inc. d/b/a Fibercore Equipment Co., Plaintiffs/Counterclaim–Defendants,

v.

Martin R. GUBB, L & P Converters Corp. and Sterling Technology, Inc., Defendants/Counterclaim–Plaintiffs.

No. 01–C–1267.

United States District Court, E.D. Wisconsin.

Aug. 25, 2003.

Mark S. Demorest, for Plaintiff or Petitioner.

Joseph S. Goode, James H. Fritz, for Defendant or Respondent.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs ("Fibercore") brought this patent infringement action against defendants Quad/Graphics, Inc. ("Quad/Graphics"), L & P Converters Corp. ("L & P"), Sterling Technology, Inc. ("Sterling"), and Martin Gubb ("Gubb"). Quad/Graphics has since been dismissed as a defendant. Plaintiffs assert two patent infringement claims. Plaintiffs also assert, against defendants Sterling and Gubb, a claim for conspiracy to induce infringement and claims of tortious interference with prospective business advantage and tortious interference

with lawful business. This court has jurisdiction over the claims relating to patents under 28 U.S.C. § 1338(a) and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). Before me now are Gubb's motions to dismiss plaintiff's second amended complaint for lack of personal jurisdiction and/or for improper venue, and Sterling and Gubb's motion to dismiss the conspiracy claim for failure to state a claim.

## I. FACTS

Fibercore is in the business of cutting off the ends of paper rolls and holds several patents on devices that perform this function. Gubb is a California resident and the owner and president of both L & P and Sterling. Sterling is a division of L & P. Sterling recently sold a machine that cuts paper rolls to Quad/Graphics. This machine is the alleged infringing product. The sale of the machine was negotiated on behalf of Sterling by Gubb. In the course of the transaction, Gubb had a number of contacts with Wisconsin. Quad/Graphics is a Wisconsin company, and Gubb negotiated the sale with Quad/Graphics employees who were located in Wisconsin. Gubb's contacts with Wisconsin were both telephonic and written.

## II. PERSONAL JURISDICTION OVER GUBB

■ Pursuant to Fed.R.Civ.P. 12(b)(2), Gubb moves to dismiss plaintiffs' claims against him based on the absence of personal jurisdiction. Whether a court has personal jurisdiction over a defendant in a patent case is determined according to the law of the federal circuit rather than of the regional circuit in which the case arose. *Wayne Pigment Corp., v. Halox,* 220 F.Supp.2d 931, 933 (E.D.Wis.2002). Plaintiffs have the burden of proving personal jurisdiction and, for purposes of determining the issue, I take all of their factual allegations as true unless they are directly

controverted. *Id.* I may consider evidence so long as I resolve all factual disputes in plaintiffs' favor. *Id.*

■ In determining whether this court has personal jurisdiction over a defendant, I look first to Fed.R.Civ.P. 4(k). *Id.* Rule 4(k) provides that even when the claim being asserted is a federal one, a federal court applies the relevant state statute to determine personal jurisdiction. *Id.* The question of whether I have personal jurisdiction over an out-of-state defendant involves two inquiries: (1) whether the forum state's long-arm statute, here, Wis. Stat. § 801.05, permits the exercise of personal jurisdiction; and (2) whether the assertion of personal jurisdiction would violate due process. *Id.* In applying the state long-arm statute, I defer to the Wisconsin court's interpretation of the statute and I liberally construe it in favor of exercising jurisdiction. *Id.* Wis. Stat. § 801.05 provides jurisdiction to the full extent provided by due process. *Allen–Bradley Co., Inc. v. Datalink Technologies, Inc.,* 55 F.Supp.2d 958, 959 (E.D.Wis.1999).

■ Under § 801.05, Wisconsin can exercise two types of personal jurisdiction over a nonresident defendant, general and specific. General jurisdiction is proper when a defendant has "continuous and systematic business contacts" with a state, and it allows a defendant to be sued in that state regardless of the subject matter of the lawsuit. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). On the other hand, a state may exercise specific jurisdiction when the defendant has a lesser degree of contact with the state and the litigation arises out of or is related to those contacts. *Id.* at 414 n. 8, 104 S.Ct. 1868.

In the present case, in the course of negotiating the sale of the Sterling machine to Quad/Graphics, Gubb had both

telephonic and written contacts with Wisconsin, and the quantity of the contacts was more than minimal. Gubb does not dispute that such contacts would be sufficient to establish personal jurisdiction over him under the Wisconsin long-arm statute if, when the contacts occurred, he had been acting as an individual. However, he argues that he made the contacts solely in his capacity as an agent of Sterling and that, therefore, the court may not exercise jurisdiction over him as an individual.[1]

■ Gubb argues that he may not be haled into Wisconsin courts because he is protected by the "fiduciary shield doctrine." The doctrine denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir.1994). Gubb's argument thus raises the question of whether Wisconsin recognizes the fiduciary shield doctrine.

■ The Wisconsin Supreme Court has not spoken on the issue. Therefore, in addressing Gubb's argument, I must predict how that court would decide the question today. *Rodman Indus., Inc. v. G & S Mill, Inc.*, 145 F.3d 940, 942–43 (7th Cir. 1998). In making this prediction, I may seek guidance from lower Wisconsin courts or courts of other jurisdictions. *See King v. Damiron Corp.*, 113 F.3d 93, 95 (7th Cir.1997). However, I must be circumspect in expanding the boundaries of established state jurisprudence. *Id.* at 97.

It is generally believed that the fiduciary shield doctrine originated in *Rene Boas & Assocs. v. Vernier*, 22 A.D.2d 561, 257 N.Y.S.2d 487 (N.Y.App.Div.1965). *Intermatic, Inc. v. Taymac Corp.*, 815 F.Supp. 290, 294 (S.D.Ind.1993). In *Boas*, the

court appeared to conclude that because the non-resident defendant was not personally liable for breach of contract, having executed the contract solely in his capacity as a corporate officer, he was not subject to personal jurisdiction in New York in a suit on the contract. *Boas*, 257 N.Y.S.2d at 489–90. One year later, in *United States v. Montreal Trust Co.*, 358 F.2d 239 (2d Cir.1966), the Second Circuit read *Boas* as creating a rule that prevents the exercise of personal jurisdiction over an individual based on the individual's contacts with the forum state, if the contacts occurred while the individual was acting in an official capacity on behalf of an organization. It called this rule the fiduciary shield and, thus, created the doctrine. *Intermatic, Inc.*, 815 F.Supp. at 294.

For a time, courts questioned whether the doctrine was part of federal due process or a matter of state law. *See, e.g., Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1055–57 (4th Cir.1983). However, it came to be viewed mainly as a state law doctrine that courts considered in determining the scope of state long-arm statutes. *Intermatic*, 815 F.Supp. at 293 (citing *Calder v. Jones*, 465 U.S. 783, 788–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (holding that defendants' status as employees did not insulate them from jurisdiction and implicitly rejecting due process-based fiduciary shield principle); and *Cantrell v. Extradition Corp. of Am.*, 789 F.Supp. 306, 309 (W.D.Mo.1992) ("The fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the long-arm statute.")).

■ The doctrine has been recognized by the courts of many states, although it

---

1. Neither Sterling nor L & P object to the court's exercise of personal jurisdiction over    them.

has also been much criticized and rejected by many jurisdictions. *Rice,* 38 F.3d at 912. For a number of reasons, I conclude that, if faced with the decision of whether or not to adopt the doctrine, the Supreme Court of Wisconsin would decline to do so.

First, Wisconsin case law points to such a result. Wisconsin cases have led one Seventh Circuit judge to predict that the Wisconsin Supreme Court would not adopt the doctrine. *See Steel Warehouse of Wis., Inc. v. Leach,* 154 F.3d 712, 716 n. 2 (7th Cir.1998) (Ripple, J. dissenting) ("It appears that Wisconsin most likely would not consider the shield to bar jurisdiction in this case.") (citing *Oxmans' Erwin Meat Co. v. Blacketer,* 86 Wis.2d 683, 273 N.W.2d 285 (1979) ("We do not think it appropriate or required by the constitution that a corporate agent be shielded from personal jurisdiction if he, as agent of the corporation, commits a tortious act in the forum.")); *see also State of Wis. v. Advance Mktg. Consultants, Inc.,* 66 Wis.2d 706, 225 N.W.2d 887 (1975) (determining that corporate director was subject to personal jurisdiction in Wisconsin because he promoted the venture giving rise to the lawsuit).

Gubb argues that the Wisconsin Court of Appeals adopted the doctrine or something very similar in *Pavlic v. Woodrum,* 169 Wis.2d 585, 486 N.W.2d 533 (Ct.App. 1992), because it failed to find the existence of personal jurisdiction over Timothy Woodrum, a corporate officer. However, the language of *Pavlic* suggests the contrary. There, Louis and Timothy Woodrum were officers and shareholders of a Florida corporation. When the corporation failed, Pavlic, an investor, sued Timothy. The state court of appeals found that Wisconsin did not have personal jurisdiction over Timothy because Louis, not Timothy, solicited a business relationship with Pavlic in Wisconsin on behalf of the corporation. However, the court suggested that Louis's contacts, although on behalf of the corporation, were probably sufficient to establish personal jurisdiction both over the corporation and him personally.

Second, I find the reasoning of courts that have rejected the fiduciary shield doctrine persuasive. In *Hardin Roller Corp. v. Universal Printing Mach., Inc.,* 236 F.3d 839, 842 (7th Cir.2001), the Seventh Circuit suggested that the doctrine is less relevant than it once was, stating:

> The fiduciary-shield doctrine makes it easier for businesses to hire agents, who need not fear that they put their personal wealth at stake in every jurisdiction that they visit on the firm's behalf. Their wealth still is at stake if they commit wrongs, but the doctrine offers the convenience of litigating closer to home. This way of stating the doctrine's effect implies that it was much more important a century ago, when travel was costly and time-consuming, than it is today, when cities 1,000 miles away are almost as easy to reach as cities 200 miles away, and when a bar with offices (or arrangements with local counsel) across the country insulates clients from much concern about the location of the courthouse.

Judge McKinney of the District Court for the Southern District of Indiana pointedly criticized the doctrine, stating that its origins were questionable, that cases applying it lacked articulation and analysis, and that it obfuscated traditional due process analysis and allowed for easy but seemingly incorrect answers to questions of jurisdiction. *Intermatic, Inc.,* 815 F.Supp. at 294–95. Judge McKinney cited a number of commentaries suggesting that the doctrine be abolished. *Intermatic,* 815 F.Supp. at 295 (citing Thomas H. Sponslor, *Jurisdiction Over the Corporate Agent: The Fiduciary Shield,* 35 Wash. & Lee L.Rev. 349, 350 (1978)); Carlos R. Carris-

quillo, *Note, The Fiduciary Shield Doctrine: A Rule of Statutory Constitution or a Constitutional Principle?*, 9 J. Corp. L. 901, 930 (1984); Robert A. Koenig, *Note, Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield*, 38 Stan. L.Rev. 813, 840 (1986). For a more recent article also to the same effect, see Lynn C. Tyler, *Personal Jurisdiction: Is it Time to Stick a Fork in the Fiduciary Shield Doctrine?*, Res Gestae (April 1997).

Further, while the doctrine may have originated in New York, the New York Court of Appeals has since rejected it, stating that the "equitable concerns which motivated development of the doctrine are amply protected by constitutional due process requisites which guarantee that jurisdiction over a non-resident will be sustained only when the demand for his presence is reasonable and consistent with notions of 'fair play and substantial justice.'" *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 201, 522 N.E.2d 40 (Ct.App.1988) (internal citation omitted). The court in *Crystal Clear Optical v. Silver*, 247 Neb. 981, 531 N.W.2d 535, 540 (1995), made a similar point:

> However, if a defendant's contacts satisfy the standards imposed by the forum state's long-arm statute and the requirements of due process, the fiduciary shield doctrine does not prevent personal jurisdiction. Rather than misplaced emphasis on the fiduciary shield doctrine as a bar to personal jurisdiction, the primary focus should be on the defendant's activities without regard to the role in which these activities were entered into. If such activities satisfy minimum contacts analysis, personal jurisdiction should be obtained.

*Id.* (internal citation omitted).

Finally, adoption of the doctrine by the state supreme court would create a conflict in Wisconsin law. It is well established that Wisconsin's long-arm statute reaches to the limits of due process. *Allen–Bradley Co., Inc.*, 55 F.Supp.2d at 959. However, the fiduciary shield doctrine limits the jurisdictional reach of a state to less than that allowed by due process. *Intermatic, Inc.*, 815 F.Supp. at 296. Thus, application of the doctrine would be contrary to the well-established interpretation given to Wisconsin's long-arm statute. Other courts have acknowledged that the doctrine is incompatible with state long-arm statutes that extend to the limit of due process and have concluded that the doctrine should not be applied in states having such long-arm statutes. *Id.* (citing *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir.1989); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521–22 (9th Cir.1989); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir.1987); *Cantrell*, 789 F.Supp. at 309–10; *Chase v. Pan–Pac. Broad., Inc.*, 617 F.Supp. 1414, 1422–23 (D.D.C.1985)); *see also Mobil Oil Corp. v. Advanced Envtl. Recycling Techs., Inc.*, 833 F.Supp. 437 (D.Del.1993).

For the foregoing reasons, I do not believe that Wisconsin would embrace the fiduciary shield doctrine. Thus, the fact that Gubb's contacts with Wisconsin occurred while he was acting on behalf of Sterling is not a bar to the exercise of jurisdiction over him as an individual by this court. Therefore, his motion to dismiss based on the absence of personal jurisdiction is denied.

## III. VENUE CONCERNING CLAIMS AGAINST GUBB

Pursuant to Fed.R.Civ.P. 12(b)(3), Gubb moves to dismiss plaintiff's complaint based on improper venue. Venue concerns the appropriate district court in which an action may be filed. *Pacer*

*Global Logistics, Inc. v. Nat'l Passenger R.R. Corp.*, 272 F.Supp.2d 784, 788–89 (E.D.Wis.2003). As a general rule, the proper venue of an action in federal court is determined by federal venue statutes. *Id.* In order for venue to be proper, it must be proper as to all defendants and all claims. *Id.* Venue is best treated as an affirmative defense, and the defendant has the burden of establishing that it is improper. *Id.*

In order to determine whether venue in this district is proper, I first ask whether any federal statute provides venue. Generally speaking, there are two types of federal venue statutes; special venue statutes and 28 U.S.C. § 1391, the general venue statute, which governs venue of all claims brought in federal court except where venue is "otherwise provided by law." *See* §§ 1391(a) & (b). Special venue provisions are typically intended to control venue of all claims brought under the statutes to which they relate. *Pacer Global*, at 788–89. Title 28 U.S.C. § 1400(b), which governs venue in patent infringement cases, is such a statute.

Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Thus, § 1400(b) governs plaintiff's patent infringement claims against Gubb. Gubb resides in California. Venue in this district is, therefore, not proper under the "resides" clause of § 1400(b) and will lie only if Gubb "committed acts of infringement" and has a "regular and established place of business" here. Having a regular and established business involves more than "doing business." *PKWare, Inc. v. Meade*, 79 F.Supp.2d 1007, 1018 (E.D.Wis. 2000). Gubb does not have a regular and established place of business in this district. Therefore, venue is not proper with respect to the patent infringement claims against him.

However, § 1400(b) does not govern venue of non-patent infringement claims, even those that may involve or relate to patents. *Modern Computer Corp. v. Ma*, 862 F.Supp. 938, 946–47 (E.D.N.Y.1994); *Medtronic, Inc. v. Am. Optical Corp.*, 337 F.Supp. 490, 493 (D.C.Minn.1971); *De Luxe Game Corp. v. Wonder Prods. Co.*, 157 F.Supp. 696, 699–700 (D.C.N.Y.1957). Therefore, § 1400(b) does not govern venue of plaintiff's claims of conspiracy to induce infringement, tortious interference with prospective business advantage and tortious interference with lawful business. Rather, venue of these claims is governed by § 1391(b)(2), the section of the general venue statute that applies to cases where jurisdiction is not founded solely on diversity of citizenship. Section 1391(b)(2) states that venue exists in a district where "a substantial part of the events or omissions giving rise to the claim occurred." Gubb does not dispute that this requirement is satisfied in the present case.

Fibercore argues that it should not have to bring its patent infringement claims against Gubb in a different district than its patent infringement claims against the corporate defendants and its other claims against Gubb and Sterling. Under the doctrine of pendent venue, claims governed by a general venue statute may be brought in the same district as a claim governed by a special venue statute if the claims arise out of the same nucleus of facts. *Pacer Global*, at 790–91. However, the converse is not true. *Id.* Where claims are governed by a special venue statute such as § 1400(b), which limits venue to specified districts, such claims may be brought only in a district specified by the statute. *Id.* at 790. This is so because congressional intent to limit the available districts is clear and cannot be circumvented. *Id.*

For the foregoing reasons, Gubb's motion to dismiss based on improper venue will be granted as to plaintiffs' patent infringement claims and denied with respect to plaintiffs' other claims.

## IV. CLAIM OF CONSPIRACY BETWEEN STERLING AND GUBB

Pursuant to Fed.R.Civ.P. 12(b)(6), defendants Sterling and Gubb move to dismiss plaintiffs' claim of conspiracy to induce infringement on the ground that it is barred by the intra-corporate conspiracy doctrine. Under Rule 12(b)(6), a claim must be dismissed if it appears beyond doubt that the plaintiff cannot adduce facts that would entitle it to relief under that legal claim. *Cousins Subs Sys., Inc. v. McKinney,* 59 F.Supp.2d 816, 818 (E.D.Wis.1999). In reviewing a complaint under this standard, I accept as true the plaintiff's allegations and construe the pleadings in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *Id.*

The intra-corporate conspiracy doctrine provides that a corporation cannot conspire with its employees. This is so because a conspiracy requires a meeting of the minds between two or more persons and the acts of a corporation and of its agents are considered to be those of a single legal actor. *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir.2000). Wisconsin recognizes the intra-corporate conspiracy doctrine. *See, e.g., Milsap v. Journal/Sentinel,* 897 F.Supp. 406, 409 (E.D.Wis.1995), *rev'd in part on other grounds,* 100 F.3d 1265 (7th Cir. 1996) (holding that allegations of conspiracy between employer and its employees insufficient under Wisconsin law); *see also Langley v. Am. Bank of Wis.,* 738 F.Supp. 1232, 1240–41 (E.D.Wis.1990) (stating that bank cannot conspire with its employees).

Plaintiffs' claim that Gubb conspired with Sterling is therefore barred by the intra-corporate conspiracy doctrine because Gubb is an officer and agent of Sterling. In an effort to avoid this result, plaintiffs make several arguments. First, plaintiffs argue that the intra-corporate conspiracy doctrine does not apply to situations where individuals within a corporation pursue their own personal interests apart from those of the corporate entity. While this assertion is correct, it has no application to the present case, because plaintiffs do not allege in their complaint that Gubb pursued interests separate and apart from those of Sterling and present no facts supporting such a contention.

Second, plaintiffs argue that the intra-corporate conspiracy doctrine does not apply because Gubb conspired with Sterling in his capacity as an officer and owner of L & P. However, again, plaintiffs make no such allegation in their complaint, and even if they had, they also allege both that Sterling is a division of L & P and that Sterling and L & P operate as a single entity. A parent and a wholly owned subsidiary also cannot conspire with one another. *See, e.g., Ford Motor Co. v. Lyons,* 137 Wis.2d 397, 426–31, 405 N.W.2d 354 (Ct.App.1987). Thus, even if Gubb conspired with Sterling in his capacity as an officer of L & P, plaintiffs' claim would fail.

## V. UNNAMED DEFENDANTS

Plaintiffs also name as defendants unknown individuals identified as "Does 1–4." The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts. *Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869, 872 (7th Cir.1997); *see also K.F.P. v. Dane*

*County,* 110 F.3d 516, 519 (7th Cir.1997). I am unaware of any exceptional circumstances in this case, and so the claims against Does 1–4 will be dismissed. However, if plaintiffs wish to add other named defendants or, if they believe that some exceptional circumstances require the use of fictitious names, they may seek leave to amend.[2]

## VI. CONCLUSION

For the above reasons,

**IT IS ORDERED** that Gubb's motion to dismiss the complaint because of the absence of personal jurisdiction is **DENIED.**

**IT IS FURTHER ORDERED** that Gubb's motion to dismiss the complaint because of improper venue is **GRANTED** with respect to plaintiff's claim of patent infringement, and **DENIED** with respect to plaintiff's other claims.

**IT IS FURTHER ORDERED** that Sterling and Gubb's motion to dismiss plaintiff's claim for conspiracy to induce infringement is **GRANTED.**

---

**2.** I have amended the caption to reflect the dismissal of Quad/Graphics and John Does 1–4 as defendants.